In the Matter of the Application of Rosalia Whitmore, Respondent, v. The Village of Tarrytown, Appellant.

To authorize proceedings under the act of 1883 (Chap. 113, Laws of 1883), providing for the ascertainment and collection of damages sustained by the owner of land adjoining a village street by reason of a change or alteration of grade of the street, it must appear that the change or alteration was by, or under authority of the village; there must have been some definite action by resolution or ordinance of its trustees fixing a new grade, or at least some definite acquiescence on its part in a new grade.

Where it simply appears that the street commissioner of a village, without express authority from it, or formal action on its part changing the grade, has from time to time, taken small quantities of earth from one place in a street and deposited it in another, or for the purpose of repairing and improving the street has cut it down in one place and raised it in another, or has dug out earth on the sides of the street for the purpose of widening the traveled bed thereof, a change or alteration of the grade, within the meaning of the act, is not shown although these acts continued for a series of years may have wrought an actual change in the grade.

In proceedings instituted under the act these facts appeared: Prior to 1883, the grade of the street was fixed, and the traveled part thereof in front of plaintiff's premises was cut down about six feet, leaving a strip about ten feet wide adjoining said premises at the original grade; the earth from this strip would from time to time cave down and fill up the gutter, and would be removed by the street commissioner to fill in other places on the street, or would be taken away by citizens for private purposes, so that by 1889 the earth, down to the grade of the street, was substantially removed, although the traveled bed of the street was not actually widened. During the years from 1882 to 1889 no action was taken by the village in regard to the grade of the street and it did not

appear that any direction was given by its trustees in reference thereto. *Held*, that no change or alteration within the meaning of the act was shown; and so, that the proceedings were not maintainable.

An order was made in the proceedings appointing commissioners ; from this no appeal was separately taken by the village. Upon the coming in of the commissioners' report, judgment was rendered against the village for damages ; this was more than sixty days after the granting of the order. The village appealed to the General Term, specifying in its notice that it also appealed from the said order. *Held*, that the appeal so far as it related to the order was in time (Code Civ. Pro. § 1316) ; and so, that the order was reviewable.

The record contained all the evidence and proceedings before the Special Term and the commissioners. It did not appear that the petitioner made any objection at General Term to the entertaining by it of the appeal from the order ; it was entertained and the order affirmed. *Held*, it was to be assumed that the appeal from the order was valid and effectual; and so, the decision of the General Term was reviewable here.

(Argued March 2, 1893; decided March 14, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made January 5, 1892, which affirmed a judgment in favor of the petitioner, entered upon an order of Special Term, confirming report of commissioners and affirmed an order of Special Term appointing such commissioners.

This proceeding was instituted by Rosalia Whitmore, the petitioner, to appraise the damages sustained by her in consequence of an alleged change of grade of one of defendant's streets.

In 1890 Rosalia Whitmore owned certain real estate on Benedict avenue, in the village of Tarrytown, and she addressed her petition to the Supreme Court under the act chapter 113 of the Laws of 1883, in which she stated that the grade of the avenue along her real estate was materially changed and altered between the first days of January, 1884 and 1889, so as greatly to injure and damage her property ; and that such change in the grade of the avenue, and the removal of the soil and dirt thereof, was done under and by direction of the village and its officers ; that the change of the

grade consisted in cutting down and lowering the avenue, and the removal of the soil and dirt therefrom, so as to leave her real estate bordering upon the avenue several feet above the new grade; and she prayed for the appointment of commissioners to ascertain and determine the amount of her damages in consequence of the change of grade.    The village answered the petition, denying the material allegations thereof.    The issues thus formed were brought to trial at a special term of the Supreme Court, and upon the evidence submitted to the trial judge, he found, as matter of fact, that during the years 1882 to and including 1889, the grade of the avenue was materially changed and altered, and dirt and stone and soil were removed therefrom, and that the avenue was cut· down and widened from time to time during those years so as to leave the whole line of her property elevated several feet above the new grade, and that the changing of the grade and the widening of the avenue and the removal of the soil and dirt therefrom were made and done under and by direction of the village and its officers.    And he found as matter of law that the village was liable for whatever damages the petitioner had sustained by reason of the facts found.    Upon the petition, answer and findings three commissioners were appointed to estimate the damages, and upon the evidence produced before them they found that during the years 1884, 1885, 1886, 1887 and 1888, the grade of the avenue was materially altered and changed, the roadbed in the center thereof widened and the bank of earth next to the land of the petitioner cut away and removed and deposited upon other streets where earth filling was needed; that by the changing of the natural grade and the widening of the avenue and the removal of the earth, the petitioner had suffered damage to the amount of $1,000.    The report thus made was confirmed at the Special Term, and judgment was entered in favor of the petitioner against the village for that amount, with costs.    Proper exceptions were taken to the findings of the judge at Special Term and of the commissioners, and thereafter the village appealed to the Supreme Court from the order appointing the commissioners and from the

final judgment confirming their report and awarding damages and costs to the petitioner. Both the order and judgment were affirmed at the General Term, and then the village appealed to this court.

*George C. Andrews* for appellant. The petitioner cannot recover for a change of grade prior to March 16, 1883. (Laws. of 1883, chap. 113; *Heiser* v. *Mayor, etc.*, 104 N. Y. 68; *Radcliff* v. *Mayor, etc.*, 4 id. 195; *Conklin* v. *N. Y., O. & W. R. R. Co.*, 102 id. 107; *Wilson* v. *Mayor, etc.*, 1 Den. 595; *Lynch* v. *Mayor, etc.*, 76 N. Y. 60; *In re Stack*, 21 N. Y. S. R. 954; *N. Y. & M. R. R. Co.* v. *Van Horn*, 57 N. Y. 473.) If the street commissioner, without authority in any way, did damage to the property of petitioner and the village is liable therefor on the theory that the street commissioner was acting within the scope of his authority, and that he and the village were both joint wrongdoers, the remedy would be by way of an action for tresspass. (*Uline* v. *N. Y. C., etc., R. R. Co.*, 110 N. Y. 98.) The reception of evidence, under objection, upon the trial before the commissioners, of the cutting down in 1882 and previous to March 16, 1883, of Benedict avenue, as forming any part of the damages in this case, was reversible error, being before the passage of the act allowing damages. (*Uline* v. *N. Y. C., etc., R. R. Co.*, 110 N. Y. 98; *In re Stack*, 50 Hun, 385.) As the order appointing the commissioners was simply an intermediate order, all proceedings had, upon which the order was made as well as the order itself, which is specified in the notice of appeal, brings up for review such proceedings and intermediate order. (Code Civ. Pro. § 1316.)

*Wilson Brown, Jr.*, for respondent. Mrs. Whitmore is entitled to the award and is entitled to maintain this proceeding. (*King* v. *Mayer*, 102 N. Y. 171.) The village is liable. (*Stack* v. *Port Chester*, 50 Hun, 385.) City authorities cannot appropriate the whole of a street for roadway merely, and cannot deprive lot owners of sidewalks. (Dillon on Mun. Corp 472.)

EARL, J.    It is provided in section 1 of chapter 113 of the Laws of 1883, under which this proceeding was instituted, that "whenever the grade of any street, highway or bridge in any incorporated village in this state shall be changed or altered, so as to interfere in any manner with any building or buildings situate thereon, or adjacent thereto, or the use thereof, or shall injure or damage the real property adjoining such highway so changed or altered, the owner or owners of such building or real estate may apply to the Supreme Court in the judicial district in which such property is situated for the appointment of three commissioners to ascertain and determine the amount of damage sustained thereby." Section 2 provides that "all the provisions of the General Railroad Act relative to the appointment of commissioners, their powers and duties, shall be applicable to the appointment of, and the powers and duties of commissioners appointed in pursuance of the provisions hereof." Section 3 provides that all damages ascertained and determined under the provisions of the act, together with the costs of the proceedings, shall be a charge upon the village, town or other municipality chargeable with the maintenance of the street, highway or bridge altered or changed.

We think the meaning, force and effect of this act were wholly misapprehended by the courts below. Before any proceeding can be instituted under the act, the grade of the street must have been "changed or altered," by or under the authority of the village. Before it can be said that the grade has been changed or altered there must generally have been some formal action by resolution or ordinance of the village fixing the new grade. There may, however, be exceptional cases where under peculiar circumstances a new grade may be established by directions given, or by acquiescence. According to the ordinary understanding of the language used in the act, there is implied some definite action, or at least some definite acquiescence fixing a new grade to which a street is either to be raised or lowered. If the street commissioner in a village should go upon a street and from time to time take a

few loads of earth from one place and deposit it in another, or for the purpose of repairing and improving a street should cut it down in one place and raise it in another, or dig out earth on the sides of the street for the purpose of widening the traveled bed thereof, by all these acts, although in the process of years they may work an actual change in the grade of the street, the grade is not changed or altered within the meaning of the act. Could an adjoining owner, every time the street commissioner takes a yard of earth out of the street at one place and deposits it at another, thus causing an appreciable damage to his abutting property, institute proceedings under this act for the appraise. ment of his damages? Such a construction of this act might involve a village in constant litigation with numerous owners of real estate along streets which are from time to time improved. In this case there is not an atom of evidence that the board of trustees of the village ever changed or altered the grade of this avenue after the year 1882. It appears that in that year persons living in the vicinity of the petitioner's property and interested in the improvment of the avenue voluntarily made contributions of money and entered into a contract to have the grade of the avenue in front of this property altered, and upon their application the trustees of the village, on its behalf, contributed $300 toward the expense of the improvement, the total cost of which was $1,850. The whole improvement was in the hands of the citizens who inaugurated it, and the only action taken on the part of the village was the appropriation of $300 toward the expense thereof. The trustees did not fix or determine the grade, or have anything to do with the actual execution of the work. The street along the petitioner's property was three rods wide. In making the improvement the persons engaged therein lowered the street in front of her property about six feet, to a width at the bottom of about twenty-five feet and at the top of the excavation about thirty-five feet, leaving an embankment at the original grade of about ten feet between the space thus excavated and the line of her property. That improve-

ment was completed in 1882. That work was done before the act of 1883 was passed, and the petitioner does not claim any damage for the change of the grade at that time. As the village assented to that improvement and aided in making it by the contribution of money, we must assume that the grade of the street was fixed as it was left by that improvement. There is no evidence whatever that that grade has ever since been changed or altered by any one. A large part of the earth in the embankment next to the petitioner's property has since been removed, but the grade of the street has not been changed. The grade of the street having been established in 1882, it was not altered or changed by the cutting down of the embankment on either side of the street for the purpose of making the whole street conform to the grade thus established. Such an improvement of a street is not within the fair meaning of the statute a " change or alteration " of the grade thereof.

But, furthermore, what happened after 1882 to this avenue was as follows : The embankment on the side of the street by the action of the elements would from time to time cave down and fill up the gutter on the side of the street, and the earth which fell into the gutter would be removed by the street commissioner ; and occasionally, from time to time, he would take a few loads of earth from the embankment and put it elsewhere, and from time to time the citizens residing in the neighborhood, who desired sand or gravel, would dig and draw some of it away for their own private purposes. In these ways this embankment which was, after the improvement of 1882, as before stated, about ten feet wide at the top, was substantially carried away, although the traveled bed of the street was not actually widened. Now, was there a change in the grade of this street every time the street commissioner removed a yard or a few yards of earth ? Could the petitioner in each of these succeeding years have instituted a proceeding under' this act alleging a change of the grade of the avenue in front of her property ? When was the grade changed ?

During all the years subsequent to 1882, the village took no

action whatever in reference to the grade of this avenue, and it does not appear that the trustees gave any directions whatever in reference to the same. Whatever earth was removed from the side of the avenue in front of the petitioner's property by the street commissioner was from time to time removed by him in the exercise of his own judgment and in the discharge of his duties in the improvement and repair of the avenue. Gradually, by the action of the elements and the removal of earth thus made by the street commissioner and other persons, this embankment was mostly cut away. But we think it is quite unreasonable to say that this constituted a change or alteration of the grade within the meaning of the act. The act was passed to meet cases where the grade of a street having once been established or naturally existing was, by act of the village, raised or lowered by ordinance or resolution, or some municipal action which effects a change of the grade within the ordinary meaning of that term.

There was, therefore, no basis whatever upon any facts appearing in this record for the maintenance of this proceeding. If the street commissioner or other persons wrongfully interfered with the petitioner's soil in the street, her remedy was against them for the wrong and not against the village under the act of 1883.

It is said, however, that the village failed to appeal from the first order made by the court at Special Term, which determined that the grade had been changed and appointed commissioners to appraise the damages, and that, therefore, the defendant's appeal must rest entirely upon the judgment entered upon the report of the commissioners of appraisal; and that the only questions which the village can now raise are those which relate to the amount of damages awarded. There are two answers to this contention. The village, in its notice of appeal from the final judgment awarding the damages, specified the order appointing the commissioners, and also appealed from that, and hence the appeal was in time under section 1316 of the Code. A further answer is that the record contains all the evidence and proceedings upon the.

trial at the Special Term of the issue formed by the answer to the petition and the findings of the trial judge upon that evidence. It also contains all the evidence given before the commissioners and the proceedings before them and their findings, and also the proceedings taken upon their report. It does not appear in the record that the petitioner made any motion to dismiss the appeal from the first order, or made any objection that it should be entertained, and it was actually entertained at the General Term, and the order was there affirmed. We must, therefore, assume that that appeal was valid and effectual, and before the General Term without objection.

We are, therefore, of opinion upon the whole case that the judgment of the General Term, entered upon the report of the commissioners and the order appointing them, should be reversed, with costs in this court and the Supreme Court to the appellant, and a new trial ordered at the Special Term of the issues formed by the answer to the petition.

All concur, MAYNARD, J., in result.

Judgment reversed.