lieve the general taxpayer therefrom, and to insure this result the charter not only provides for a lien upon the property directly benefited, but for a personal liability against the owner of such property, and the remedy to enforce this personal liability is given in addition to the remedy against the property. The object sought can be better and more certainly accomplished by holding that the city may pursue both remedies together until such time as the amount of the assessment is secured. No harm is done the property owner. He may stop both proceedings by paying the assessment, and if he does not pay the amount can be collected but once, and then the proceedings both end. The charter requires the proceedings to be taken against the property. The officers are given no choice or discretion in the premises. They must move along, and, this being so, it will render the personal liability statute above quoted nugatory, if both remedies cannot be pursued at the same time.

The city does not want the property, but the money, so as to relieve the general taxpayers of the burden of local improvements, which ought not to be thrown upon them. Both remedies have the same end in view—the securing of the money—and the design of the charter is that the remedy against the property shall be pursued until this result is reached. The proceeding is not yet ended. The city has not yet full title to the property—may never have. A foreclosure must be had in the end, and until that is terminated there may be a redemption from the sale to the city. If this proceeding succeeds, that one must be terminated.

The result of the views herein expressed is that the decree, so far as appealed from, should be reversed, and the executor should, by the provisions to be inserted in the decree, be required to pay to the city the installments of the assessments past due, with interest, costs, and expenses, including costs of this appeal, and to retain in his hands a sufficient amount to pay the remaining assessments when they come due. All concur.

(86 App. Div. 211.)

### TORGE v. VILLAGE OF SALAMANCA.

(Supreme Court, Appellate Division, Fourth Department. July 7, 1903.)

1. RAILROADS—GRADE CROSSINGS—CHANGE—PROPERTY OWNERS — DAMAGES— REMEDY—ACTION AGAINST VILLAGE.

Section 62 of the railroad law as amended (Laws 1897, p. 796, c. 754) authorizes the trustees of a village to commence proceedings before the railroad commissioners for the change of a grade crossing. Section 65 (page 797) provides that, when a change is made under section 62, 50 per cent. of the expense thereof shall be borne by the railroad company, 25 per cent. by the village, and 25 per cent. by the state; that the work shall be done by the railroad, subject to the supervision of the railroad commissioners, and the expense shall be paid primarily by the railroad, and the expense of acquiring additional lands, rights, or easements primarily by the village; and on the completion of the work, and its approval by the railroad commissioners, an accounting shall be had between the railroad and the village, and a settlement made. *Held*, that where the village fails to acquire the rights and easements of the property owners affected, and to ascertain the damages to which they are entitled, and does nothing, the remedy of the property owner is to institute an action at law against the village for damages.

2. SAME—VILLAGE LAW—APPLICABILITY.

> The remedy provided by the village law (Laws 1897, p. 420, c. 414, § 159, as amended) is not applicable, that law providing that "if the village has exclusive control and jurisdiction of a street or bridge therein it may change the grade thereof," and that the person claiming damages from such change of grade may have the proceedings provided for to recover such damages, as in the case stated the village does not have exclusive jurisdiction and control of the street where the grade was changed, and not being the one that changed the grade.

Appeal from Special Term, Cattaraugus County.

In the matter of the claim of Caroline Torge against the village of Salamanca for damages arising from the change of the grade of Main street, in said village. From an order appointing commissioners to ascertain the damages, the village appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Henry P. Nevins and G. W. Cole, for appellant.
Niles .C. Bartholomew, for respondent.

WILLIAMS, J. The order should be reversed, and the proceedings dismissed, with costs. The proceeding was commenced by petition. An answer was served by the village. It was referred to W. S. Thrasher, as referee, to take proof as to the issues, except damages. The referee heard the matter, and made findings of fact and of law, and thereupon the court adopted the findings of the referee, and made the order appealed from. The parties stipulated to leave the evidence taken by the referee out of the record, and therefore the findings of fact will be regarded as supported by the evidence and as true. The facts, briefly stated, are as follows: The petitioner's property was situated on Main street, where the Erie Railroad crossed that street. September 28, 1899, the trustees of the village passed a resolution authorizing an application to the state board of railroad commissioners to cause the Main street crossing of the Erie Railroad to be changed from a grade crossing to one where the street should be carried under the tracks of the railroad; and again, June 7, 1900, the trustees passed resolutions that they take all proper and necessary steps to agree with the Erie Railroad that an order be made by the railroad commissioners that such change be made in the crossing; that as soon as such order was made proper steps should be taken by the village to acquire by condemnation the rights and easements necessary to carry out the order; that the village was willing to acquire such rights and easements, and pay such damages as might be awarded by the court, and was willing to accept the offer or option of Mrs. Torge for her damages, if the same should be advised and approved by the Erie Railroad Company. Thereafter, and April 11, 1901, the railroad commissioners made an order reciting that a petition, under section 62 of the railroad law (Laws 1897, p. 796, c. 754), in the form of a resolution by the trustees of the village, had been filed January 16, 1900, asking that such change be made in the crossing in question; that a public hearing, after notice as required by the statute, had been given at Albany, March 20, 1900, at which the village, the property owners, and the Erie Railroad Company had appeared;

that an adjourned hearing had thereafter been had at the village of Salamanca, March 23, 1901, at which the village, the property owners, and the Erie Railroad Company had appeared; that a subsequent adjourned hearing had been had at Albany, April 11, 1901, at which the village, the property owners, and the Erie Railroad Company had appeared; and that the hearing had then been closed, and that the railroad commissioners had twice inspected the crossing in question. Then the order determined that the change should be made in the crossing by carrying the street under the railroad, in accordance with plans on file in their office. Thereafter, and October 24, 1901, the trustees passed a resolution approving of the plan and determination of the railroad commissioners in regard to the change of the crossing, and authorizing and approving the change of grade of the street, and the work necessary to conform to the plans adopted by the railroad commissioners. Thereafter the work of changing the crossing and grade of the street in accordance with such plans was undertaken and completed by the Erie Railroad Company, through their contractors, by agreement, made with the approval and consent of the railroad commissioners and the village. Within 60 days after the completion of such work, and October 4, 1902, the petitioner filed with the village clerk a verified claim for damages arising from such change of grade of the street, and such claim was delivered by the clerk to the village attorney. Thereafter the trustees passed a resolution that the claim be received and referred to the village attorney. There was no other presentation of the claim to the trustees. The trustees have not agreed as to the damages. Petitioner's property lies on the easterly side of Main street. The part of the street lowered and grade changed was the westerly half of the street. The court, upon the facts stated, decided that commissioners should be appointed to ascertain the damages, under the act relating to villages (chapter 414, p. 366, Laws 1897, being chapter 21, Gen. Laws), and the commissioners were appointed accordingly by the order appealed from.

The proceeding to change the crossing in question was instituted under the railroad law (Laws 1890, p. 1082, c. 565). The application to the commissioners was regarded by them as made under section 62, etc., of the law as amended in Laws 1897, p. 796, c. 754, and Laws 1898, p. 1250, c. 520. Section 62 provides that the trustees of a village may commence the proceeding before them. There was no petition in form here, but the railroad commissioners treated the resolution of September 28, 1899, as a petition, stating the essential facts, and no objection was made by any of the parties to the proceeding to this action by the railroad commissioners. Section 62 requires the railroad commissioners to appoint a time and place for a hearing, and to give notice thereof to the petitioner, the village, the railroad company, and the property owners, and to publish the same in the newspapers. Apparently these things were done, because all the necessary parties appeared before the railroad commissioners at every hearing. The decision was then made, and no appeal has been taken therefrom, although an appeal is provided for by such section 62 to the Appellate Division. Section 63 (page 797) provides that the

village may, with the approval of the railroad company, acquire, by purchase, any lands, rights, or easements necessary or required for the purpose of carrying out the provisions of section 62 of the act, but, if unable to do so, shall acquire such lands, rights, or easements by condemnation, under the condemnation law, and the railroad company shall have notice of such proceedings, and the right to be heard therein. The village has not complied with either of these provisions as to the property in question.

Section 65 (page 797) provides that, when a change is made in a crossing under section 62 of the act, 50 per cent. of the expense thereof shall be borne by the railroad company, 25 per cent. by the village, and 25 per cent. by the state; that the work of making the change shall be done by the railroad company, subject to the super-vision and approval of the railroad commissioners, and the expense of such work may be paid primarily by the railroad company, and the expenses of acquiring additional lands, rights, or easements shall be paid primarily by the village; and upon the completion of the work and its approval by the railroad commissioners an accounting shall be had between the railroad company and the village of the amounts expended by each, and a settlement be made. The section further provides for the details of the approval and supervision by the railroad commissioners of the contract and the work performed by the railroad company, and the details of the settlement between the railroad company and the village and the state. In this case the railroad company performed its duty by causing the work to be done, and no question is made but that it had the full approval of the railroad commissioners. The only trouble in carrying out the full scheme for making these improvements, and the sharing in the expense thereof, is that the village has not, by purchase or condemnation proceedings, acquired the rights and easements of property owners, and especially this petitioner has not ascertained in a legal way the damages to which the petitioner is entitled, if any, and paid the same. The village simply sits still and does nothing, and therefore the petitioner, a property owner, commences this proceeding. The only question is whether she has adopted a proper remedy to secure her rights. The proceeding by which the change was made was clearly brought under the railroad law. The damages of the petitioner, if any, must finally be shared between the railroad company and the village and the state, as provided by that law. The law, however, provides expressly that these damages shall be paid primarily by the village, and the amount shall be agreed upon or determined by condemnation proceedings. The village must therefore be solely liable to the petitioner for her damages. I see no reason why she might not maintain an action to recover them, and apparently that is her only remedy. Ordinarily, where property rights or easements are taken for public use, and no compensation has been paid or condemnation proceedings taken, the property owner, by action, seeks to restrain the use of the property until his damages are paid or condemnation proceedings are taken as provided by law. In this case, however, the court would not restrain the use of the street or crossing. The remedy to recover damages would be entirely adequate, and the plaintiff could recover what-

ever amount she could establish. The only way the village could avoid such a result would be the taking condemnation proceedings as provided by the railroad law. The remedy under the village law (Laws 1897, p. 366, c. 414, § 159, as amended by Laws 1901, p. 180, c. 68) is not applicable to this case, and is not available to the petitioner. This section was a re-enactment of chapter 113, p. 100, Laws 1883, and it was held under the act of 1883 that, in order to authorize the proceedings, it must be made to appear that the change of grade was made by or under the authority of the village (Whitmore v. Tarrytown, 137 N. Y. 409, 33 N. E. 489); and the same rule has been recognized under section 159 of the village law (Matter of Greer, 39 App. Div. 22, 56 N. Y. S. 938). Indeed, the village law itself provides:

"Sec. 159. If the village has exclusive control and jurisdiction of a street or bridge therein, it may change the grade thereof. If such change of grade shall injuriously affect any building or land adjacent thereto, or the use thereof, the change of grade to the extent of damage resulting therefrom shall be deemed the taking of such adjacent property for a public use."

And then it is provided that the person claiming damages from such change of grade may have the proceedings provided for to recover such damages. This provision is not applicable here, because the village had not exclusive jurisdiction and control of the street where this grade was changed, and because it did not change the grade. The control of the change of the crossing and the subsequent grade of the street was in the railroad commissioners, under the provisions of the railroad law hereinbefore considered, and the changes in the crossing and the grade were made, under the provisions of the railroad law, by the railroad company, under the direction of the railroad commissioners. The village neither made nor directed the change of grade. It had a right, under section 62 of the railroad law, to petition for the change in the crossing to the railroad commissioners, and did so in this case; but that was not the exercise of any authority in making the change of grade under the village law. The condemnation proceedings referred to in section 63 of the railroad law, which the village was to use to acquire the interests of property owners, were the general condemnation proceedings provided by the law of the state, and were to be prosecuted by the village. They could not be these special proceedings provided by section 159 of the village law to be prosecuted by the property owner. Another reason why this provision of the village law is not applicable to this proceeding under the railroad law is that a different rule as to damages is prescribed in section 159 of the village law from that under the general condemnation law.

It is claimed that the petitioner for various reasons is not entitled to any damages in any event for this change of grade; but we do not deem it necessary to consider that question. We merely determine that if she is entitled to damages she cannot have the remedy under the village law to recover the same.

The order appointing commissioners should therefore be reversed, and the proceedings dismissed, with costs. All concur.