In the Matter of the Petition of NORBERT HEINSHEIMER, Respondent, to Enforce an Attorney's Lien.

ANTON H. MEYER, as Assignee for Creditors of the UNITED STATES RESTAURANT AND REALTY COMPANY, Appellant.

Attorney and client — lien of attorney on papers, securities or moneys of a client to secure payment for services — when attorney who has acted as general counsel for a corporation at an annual salary has no lien on papers in action for unpaid balance of salary.

1. The liens available to an attorney are of two kinds: A retaining lien on all papers, securities or moneys belonging to his client which came into his possession in the course of his professional employment, which is a general lien for the entire balance of account, dependent, however, on possession. There is also a charging lien, which is not dependent on possession, and is not a lien for a general balance of account. From the commencement of an action or special proceeding the attorney has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, decision, judgment or final order in his client's favor, and the proceeds thereof in whosesoever hands they may come. (Judiciary Law [Cons. Laws], ch. 30, § 475.)

2. The petitioner, who had acted as general counsel, at a fixed salary, for the corporation of which appellant is the assignee, on the termination of that relation, by arrangement with the client, prosecuted an action on its behalf to judgment and claims a lien on the proceeds of the judgment for services rendered in that action and for a sum remaining unpaid on his salary. *Held*, that the lien is valid for services rendered in the action, but cannot be sustained for services under the general retainer.

*Matter of Heinsheimer*, 164 App. Div. 265, modified.

(Argued February 23, 1915; decided March 23, 1915.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered November 20, 1914, which modified and affirmed as modified an order of Special Term confirming the report of a

referee in a proceeding to ascertain and define the amount of an attorney's lien.

The facts, so far as material, are stated in the opinion.

*Alexander Gordon* and *William F. McCombs* for appellant. The orders of the Special Term made June 24, 1913, and of the Appellate Division made November 7, 1913, affirming the same, are reviewable on this appeal from the order finally determining this special proceeding. (*People ex rel. B. & C. Co.* v. *Barker*, 155 N. Y. 308; *Matter of Grab*, 157 N. Y. 69; *People ex rel. L. A. E. L. & P. Co.* v. *P. S. Comm.*, 199 N. Y. 254; *Matter of Whitmore* v. *Village of Tarrytown*, 137 N. Y. 409; *N. Y., L. & W. R. R. Co.* v. *Erie R. Co.*, 170 N. Y. 448; *Moyer* v. *Moyer*, 7 App. Div. 523.) The intermediate order of the Special Term of June 24, 1913, its final order of June 5, 1914, and the orders of the Appellate Division of November 7, 1913, and November 6, 1914, are erroneous in that they permit the petitioner to assert a statutory charging lien under the Judiciary Law against a judgment and its proceeds for the balance of the petitioner's yearly salary due him on February 12, 1910, under his general retainer, and amounting to $3,096.92, with interest. (*Goodrich* v. *McDonald*, 112 N. Y. 157; *Phillips* v. *Stagg*, 2 Edw. Ch. 108; *St. John* v. *Diefendorf*, 12 Wend. 261; *Williams* v. *Ingersoll*, 89 N. Y. 508; *Adams* v. *Fox*, 40 Barb. 442; *Brown* v. *Mayor*, 11 Hun, 21; *West* v. *Bacon*, 13 App. Div. 371; *Anderson* v. *de Braekeleer*, 25 Misc. Rep. 343; *Leask* v. *Hoagland*, 64 Misc. Rep. 157; *Bowling Green Bank* v. *Todd*, 52 N. Y. 489; *Ward* v. *Craig*, 87 N. Y. 550; *Schwartz* v. *Schwartz*, 21 Hun, 33; *Matter of Lorillard*, 42 Hun, 545; *Maxwell* v. *Cottle*, 72 Hun, 529; *McKibben* v. *Nafis*, 76 Hun, 344.) The motion to dismiss this appeal in so far as said appeal purports to bring up other orders than the final order of the Appellate Division should be in all respects denied. (*N. Y., L. & W. R. R. Co.* v.

*Erie R. Co.*, 170 N. Y. 448; *Matter of Earnshaw*, 196 N. Y. 330; *Matter of Mohawk Overall Co.*, 210 N. Y. 474; *Matter of Whitmore* v *Vil. of Tarrytown*, 137 N. Y. 409.)

*Henry K. Heyman* and *Norbert Heinsheimer* for respondent.   Respondent's motion to dismiss the appeals from all the orders appealed from except the order of November 6, 1914, should be granted.   (*Matter of Union Trust Co.*, 172 N. Y. 494; *Jones* v. *Jones*, 118 App. Div. 148; *Rastetter* v. *Hoenninger*, 157 App. Div. 553; *McBride* v. *N. Y. Tunnel Co.*, 113 App. Div. 821; 187 N. Y. 573; *Carpenter* v. *N. Y. E. J. Pub. Co.*, 111 App. Div. 266; *Lewis* v. *Upton*, 90 App. Div. 453; 181 N. Y. 515; *Cluff* v. *Day*, 141 N. Y. 580; *Mygatt* v. *Coe*, 142 N. Y. 78; *Mansfield* v. *N. Y. C. & H. R. R. R. Co.*, 114 N. Y. 331; *Osborn* v. *Cardeza*, 208 N. Y. 131; *Seaward* v. *Davis*, 148 App. Div. 805; *Abbey* v. *Wheeler*, 170 N. Y. 122; *Bates* v. *Holbrook*, 89 App. Div. 548.)   Petitioner's lien for $3,096.92 was properly sustained.   (*Goodrich* v. *McDonald*, 112 N. Y. 157; *Randall* v. *Van Wagenen*, 115 N. Y. 527; *Marshall* v. *Meech*, 51 N. Y. 140; *Pulver* v. *Harris*, 52 N. Y. 73; *Coughlin* v. *N. Y. C. & H. R. R. R. Co.*, 71 N. Y. 443; *Matter of King*, 168 N. Y. 53; *Kipp* v. *Rapp*, 7 Civ. Pro. Rep. 316; *Hunt* v. *Rousmanier*, 8 Wheat. 174; *Gropel* v. *Hodges*, 112 N. Y. 419; *Schwartz* v. *Schwartz*, 21 Hun, 33; *St. John* v. *Diefendorf*, 12 Wend. 261; *Adams* v. *Fox*, 40 Barb. 442.)

CARDOZO, J.   The petitioner is a member of the bar. He was retained by the United States Restaurant and Realty Company as its general counsel at a salary of $5,000 a year, payable semi-yearly.   In February, 1910, there was due to him under this retainer a balance of $3,096.92.   The client then terminated the general employment and selected other counsel.   The petitioner declined to surrender his papers unless the arrears of salary were

paid. In this he acted within his rights. At the client's request, however, he tried an action then upon the calendar, and recovered a judgment against one Schulte for $4,176.64. For this he was to be paid whatever the service was worth. The client then made an assignment for the benefit of creditors. The assignee was substituted as plaintiff, and another lawyer was substituted as attorney, without prejudice, however, to the petitioner's right to enforce his lien, if any there was found to be. After appeals, first to the Appellate Division and then to this court, the judgment was affirmed.

This proceeding was thereupon begun by the petitioner to determine the extent of his lien on the proceeds of the judgment. The value of the services rendered in the trial of the action against Schulte, after the general employment was ended, has been fixed by the Appellate Division at $500. That the petitioner has a lien to this extent is conceded. The question is whether he has a lien for the unpaid balance of his salary. The services under the general retainer included many matters other than the *Schulte* case. They included many matters having no relation to any lawsuit. All services alike were to be paid for by this salary; and the order under review makes the entire balance of salary a lien upon the judgment.

We think that this is an unwarranted extension of the scope of an attorney's lien. At common law, the liens available to an attorney were of two kinds. There was a retaining lien on all papers, securities or moneys belonging to his client which came into his possession in the course of his professional employment. (*Bowling Green Savings Bank* v. *Todd*, 52 N. Y. 489; *Ward* v. *Craig*, 87 N. Y. 550, 560; *Goodrich* v. *McDonald*, 112 N. Y. 157, 163.) This was a general lien for the entire balance of account. It was dependent, however, upon possession. There was also a charging lien, which bound a judgment recovered through the attorney's efforts. This lien was not dependent on possession. The very reason for its

existence was to save the attorney's rights where he had been unable to get possession. "It was a device invented by the courts for the protection of attorneys against the knavery of their clients, by disabling clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained." (*Goodrich* v. *McDonald, supra.*) A clandestine or collusive payment after notice, actual or constructive, of the lien, did not discharge the debtor. (*Coughlin* v. *N. Y. C. & H. R. R. R. Co.,* 71 N. Y. 443, 448.) But the reason for the existence of this lien suggests the limitation of its scope. It was not a lien for a general balance of account. It was a lien for the value of the services rendered in that very action. (*Williams* v. *Ingersoll,* 89 N. Y. 508, 518; *Adams* v. *Fox,* 40 Barb. 442, 445; *West* v. *Bacon,* 13 App. Div. 371; *Phillips* v. *Stagg,* 2 Edw. Ch. 108; *Hazeltine* v. *Keenan,* 54 W. Va. 600; *Weed Sewing Machine Co.* v. *Boutelle,* 56 Vt. 570.) If the attorney got possession of the fund, he had a general lien. If he did not get possession, his lien was for the services that brought the fund into existence. This charging lien still exists under our statutes. It has been enlarged to the extent that it now attaches to a cause of action even before judgment. "From the commencement of an action or special proceeding" the attorney now has a lien "upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, decision, judgment or final order in his client's favor, and the proceeds thereof in whosoever hands they may come." (Judiciary Law, Cons. Laws, ch. 30, sec. 475.) Except as thus changed, the charging lien is to-day what it was at common law.

Neither at common law nor to-day does such a lien embrace a claim for unpaid salary. Meritorious the petitioner's services doubtless were. They cannot, however, be made a charge upon the judgment. In serving under his general retainer, he was in the same position as

any other salaried employee. He was to receive $5,000 a year, payable semi-annually. In return, he was to do anything and everything in the line of a lawyer's work that his client might require. It was a mere accident that part of his work included a lawsuit in which the client was a plaintiff. He would have earned his pay just the same if he had done office work exclusively. He might indeed have earned it though he had done nothing at all. In point of fact, the work that he did in the *Schulte* case, while the general retainer was in force, must have been insignificant in amount. We think it cannot be made use of as an excuse for charging the entire salary on the proceeds of the judgment.

The charging lien of an attorney has been likened to the lien of an artisan or mechanic. But even the lien of an artisan or mechanic will be lost if the terms of payment are inconsistent with its existence. (*Chase* v. *Westmore*, 5 M. & S. 186.) If the work is done, not on the credit of the thing itself, but solely on the credit of the owner, there is a waiver of the lien. Such a waiver will result, for illustration, where the agreement is that the thing shall be first returned and payment made thereafter. It was pointed out by Lord ELLENBOROUGH in *Chase* v. *Westmore* (*supra*) that this has long been the law. We are referred by him to the Year-Book, Easter Term, 5 Edw. 4, fol. 2 b: "Note, also, by Haydon, that an hosteler may detain a horse, if the master will not pay him for his eating. The same law is, if a tailor make for me a gown, he may keep the gown until he is paid for his labour. And the same law is, if I buy of you a horse for 20s., you may keep the horse until I pay you the 20s.; but if I am to pay you at Michaelmas next ensuing, here you shall not keep the horse until you are paid." The same rule has been followed in this court. In *Wiles Laundering Co.* v. *Hahlo* (105 N. Y. 234, 241) the plaintiff was in the laundry business. Its agreement was that the goods laundered for the manufacturer should

be returned as fast as the work was done, and payment made at the beginning of the following month. "The return of the goods * * * was to precede the right to demand payment for the work, by a longer or shorter period, according to circumstances." This was held to establish a waiver of the lien. Many other cases enforce the same rule. (*Stoddard Woolen Manufactory* v. *Huntley*, 8 N. H. 441; *Fieldings* v. *Mills*, 2 Bosw. 489; *Blumenberg Press* v. *Mutual Merc. Agency*, 77 App. Div. 87.)

We think the petitioner's contract is inconsistent with an intent that he should be protected by a charging lien upon the fruits of the judgment. "The facts of the case must be looked at to see whether the solicitor has taken a security incompatible with the existence of his lien, or has made with his client an arrangement which sufficiently indicates the intention of the parties that the right shall no longer be enforced." (*Matter of Morris*, L. R. [1908] 1 K. B. 473, 479; *Bank of Africa* v. *Salisbury Gold Mining Co.*, L. R. [1892] A. C. 281, 284. See also *West* v. *Bacon*, 164 N. Y. 425.) The nature of the services for which the salary was to be paid, is one token of intent. The time of payment of the salary, at semi-annual intervals, is another. Both tokens in the case at hand forbid the implication of a lien. The petitioner was not in the position of an artisan bestowing labor on the credit of the cause of action or the judgment. His salary covered services that had no relation to the judgment, and the right to payment did not accrue, even though judgment was recovered, until the semi-annual period had gone by. The same statute that gives an attorney a lien on the judgment, gives him a lien on the cause of action, and the lien attaches the moment that the action is begun. But plainly no such lien attached in favor of the petitioner. The cause of action was not security for the prospective installment of his salary; and the merger of the cause of action in the judgment did not change the security. The

prospective salary was a claim against the client personally, and not a lien upon anything. A charging lien cannot exist unless it is an element, express or implied, of the agreement that the lawyer is to be paid out of the fruits of the judgment. The petitioner waived that right by his agreement. He could not have arrested payment of the judgment and tied up the fund till his salary became due. He could not have prevented the judgment debtor from making payment at once and directly to the creditor, though his salary was to fall due the following day. His agreement in substance was that there should be no relation, either in time or in amount of payment, between his receipt of salary and his services in lawsuits. The laundry, in *Wiles Laundering Co.* v. *Hahlo* (*supra*), waived its lien when it agreed to deliver goods as fast as the work was done, and postpone payment till the following month. The petitioner waived his lien when he agreed that the proceeds of judgment should be remitted as collected, and payments of salary received at stated intervals. In both cases, it so happened that before the services were completed, the hour of payment had been reached, and the employer was in default. The lien is not affected by these accidents of time. It depends upon the nature of the agreement, and not upon the moment of performance. The agreement in its inception was either consistent with a lien or inconsistent. Whether it was the one or the other must be determined as of the hour of its making.

We think for these reasons that the lien for salary must fail. In reaching this conclusion, we give heed to the admonition of Lord ELLENBOROUGH in *Wilson* v. *Kymer*, (1 M. & S. 157), repeated in *McFarland* v. *Wheeler* (26 Wend. 467), and again in *Goodrich* v. *McDonald* (*supra*, at p. 164), that "in case of lien, we should be anxious to tread cautiously, and on sure grounds, before we extend it beyond the limits of decided cases."

There has been no error in the appellant's practice in

bringing up for review an intermediate order of the Appellate Division. (*N. Y., L. & W. Ry. Co.* v. *Erie R. R. Co.*, 170 N. Y. 448; *Matter of Whitmore* v. *Village of Tarrytown*, 137 N. Y. 409.) The statement in the notice of appeal that the order of the Special Term is also to be reviewed, is a harmless irregularity. The right to review that order follows from the right to review the order which affirmed it.

The motion to dismiss the appeal in so far as it brings up for review the intermediate order of the Appellate Division, should be denied; and the final order of that court should be modified by subtracting from the lien awarded to the petitioner the sum of $3,096.92, with accrued interest thereon, and as so modified the order should be affirmed, with costs to the appellant in this court.

HISCOCK, CHASE, COLLIN, MILLER and SEABURY, JJ., concur; WILLARD BARTLETT, Ch. J., absent.

Ordered accordingly.