IRISH FREE STATE and Others, Plaintiffs, *v.* GUARANTY SAFE DEPOSIT COMPANY and Others, Defendants.*

Supreme Court, New York County, June 23, 1933.

---

* See, also, 233 App. Div. 90.

*Frank P. Walsh,* attorney *pro se* and for Hearn committee.

*Shearman & Sterling,* for the receivers.

*O'Brien, Boardman, Conboy, Memhard & Early [Martin Conboy* and *David Asch* of counsel], for the plaintiff Irish Free State.

*Martin Conboy [David Asch* of counsel], for the defendants DeValera and O'Mara.

FRANKENTHALER, J. This is an application by Frank P. Walsh for the fixation of the amount of an attorney's charging lien which he claims to have upon bond certificates issued by the " Republic of Ireland " and now in the possession of receivers appointed by this court. A judicial direction as to the method of enforcement of the alleged lien is also prayed for.

The services upon which the petitioner predicates his assertion of a charging lien may be divided into three distinct groups: (1) Services rendered in securing, through the Department of State, promises of the President and the Minister of External Affairs of the Irish Free State to the effect that said government would pay the unpaid balance due upon the bond certificates upon the termination of the receivership in the action now pending in this court; (2) services performed in obtaining an order of the Appellate Division directing the receivers to retain bond certificates filed with them, except where the owners thereof make application for the return of their certificates; and (3) services rendered in this

court, as well as in the Appellate Division and in the Court of Appeals, in resisting a claim upon bond certificates of the face value of $100,000 asserted by the Friends of Irish Freedom.

There are two kinds of liens available to an attorney, one a retaining lien on all papers, securities or moneys belonging to his client which come into the attorney's possession in the course of his professional employment, and the other a charging lien which also existed at common law but has now been enlarged by statute (Judiciary Law, § 475) so as to apply to the client's cause of action, claim or counterclaim even before judgment. (*Matter of Heinsheimer*, 214 N. Y. 361, 364, 365.) The retaining lien is dependent upon possession, while the charging lien is independent thereof, " the very reason for its existence " being " to save the attorney's rights where he had been unable to get possession." (*Matter of Heinsheimer, supra*, 364, 365; *Robinson* v. *Rogers*, 237 N. Y. 467, 470.)

It is important to note several distinctive features of the charging lien. The charging lien is regulated by section 475 of the Judiciary Law. (*Matter of Craig*, 171 App. Div. 218, 220; affd., 220 N. Y. 576; *Matter of Heinsheimer, supra*, 365.) By the very terms of that section the charging lien applies only to the client's " cause of action, claim or counterclaim." Thus, in *Ekelman* v. *Marano* (251 N. Y. 173), it was held that an attorney employed to defend two actions brought against his client by the latter's husband to divest her of her title and interest in certain real property standing in the joint names of the parties, had no charging lien where the answer contained no counterclaim. The reason was that (p. 176): " The attorney's services would not bring into existence any fund, and for the services rendered in meeting the attack the attorney had no charging lien at common law and the statute has created no lien."

A second important characteristic of the charging lien is that it applies only to services rendered in the action or special proceeding in which the client's cause of action, claim or counterclaim is asserted. Thus, in *Matter of Craig (supra)*, Judge SCOTT, writing for the Appellate Division in this department, said (at p. 220): " That section provides for a lien only in cases in which there has been commenced an action or special proceeding in which the client has asserted a claim or a counterclaim. * * * What the petitioner here claims is a charging lien, whereby he seeks to impress upon his client's property a lien for services rendered outside of any action or special proceeding. This he cannot do."

In *Matter of Heinsheimer (supra*, at p. 365) Judge CARDOZO, writing for the court, aptly pointed out that the very reason for

the existence of the charging lien, namely, to save the attorney's rights where he had been unable to get possession, suggested the limitation of its scope (p. 365): " But the reason for the existence of this lien suggests the limitation of its scope. It was not a lien for a general balance of account. It was a lien for the value of the services rendered in that very action. * * * If the attorney got possession of the fund, he had a general lien. If he did not get possession, his lien was for the services that brought the fund into existence."

A third essential of the charging lien is that the services for which it is claimed must be rendered in an " action or special proceeding " in the courts of this State. (*Matter of Albrecht*, 225 App. Div. 423; affd., 253 N. Y. 537.) In that case it was held that an attorney had no lien under section 475 of the Judiciary Law upon a refund made by the Federal government to his client for overpayment of taxes, since the services were not rendered in an " action or special proceeding " in the courts of this State. Services rendered in hearings before the Commissioner of Internal Revenue and the United States Board of Tax Appeals did not, according to the court, entitle the attorney to a charging lien.

Applying these attributes of the charging lien to the services rendered by the petitioner in obtaining " through diplomatic channels," a promise by officials of the Irish Free State that it would make payment of the balances due on the bond certificates, we find that none of the requirements of a charging lien are met. It has been held in this very action that the holders of the bond certificates have no valid cause of action, claim or counterclaim upon which an affirmative judgment may be recovered against the plaintiff.

" The plaintiffs are clearly right in their contention that under the authorities no affirmative judgment can be recovered herein for a sum of money against the sovereign plaintiff." (*Irish Free State* v. *Guaranty Safe Deposit Co.*, 127 Misc. 86, 87, PROSKAUER, J.) In fact, as Mr. Justice PROSKAUER pointed out, the defendants disavowed any intent to obtain such a judgment, claiming that they merely sought to impress a lien upon the funds within this jurisdiction (p. 87). " The defendants in brief disclaim any intent to secure such a judgment, stating that their prayer for a determination of the matter of their lien does not mean a prayer for money judgment against a sovereign plaintiff, but merely for the determination of the amount of a lien which they assert against the fund which is brought into court." This claim of lien, directed solely at the funds within this jurisdiction, is of no moment upon the present application since the petitioner and others have already received an allowance from the court in full payment of the services

performed by them in impounding the funds within this State for the benefit of all bond certificate holders and in enabling the latter to receive their distributive shares of those funds. The services rendered by the petitioner in connection with said claim are not included among those for which he now seeks a lien. As no cause of action, claim or counterclaim has been interposed against the plaintiff for the payment of the balance due to the holders of bond certificates after the application thereto of the funds within this State, it must be clear that no charging lien may properly be asserted by the petitioner. Furthermore, there is no fund in existence to which such a lien may attach since the promises on the part of representatives of the Irish Free State to make payment to the bond certificate holders are still executory and are not legally enforcible against the Irish Free State without its consent. There is likewise no " verdict, report, decision, judgment or final order " (See Judiciary Law, § 475) in existence in favor of the petitioner's clients to which a charging lien may attach. (See *Matter of Anderson* v. *U. S. Fidelity & Guaranty Co.*, 238 App. Div. 48.)

Moreover, the services of the petitioner which brought about the promises of payment were not performed in this action, or, in fact, in any action or special proceeding pending in the courts of this State or elsewhere. As no charging lien may be had except for services rendered in an action or special proceeding in the courts of this State, it is obvious that the petitioner's attempt to impress such a lien must fail.

In support of his claim of a charging lien the petitioner cites the case of *Cunningham* v. *Sizer Steel Corporation* (1 F. [2d] 653), decided by the District Court of the Western District of New York. That case is clearly distinguishable in that there the attorney's services had actually resulted in a completed and accomplished reduction of a tax indebtedness and had thus increased the fund in the possession of the court. Here the promise to pay the balance to the bond certificate holders is still executory. It is true that the opinion of the court contains language to the effect that a charging lien may be predicated upon services rendered before the United States Department of Internal Revenue. Since the *Cunningham* case was decided, however, the Appellate Division of the Fourth Department has squarely held that services rendered in procuring refunds of Federal taxes may not properly form the basis of a charging lien, and this determination has been affirmed by the Court of Appeals (*Matter of Albrecht, supra*).

It is worthy of note in this connection that the case of *Flanagan* v. *Conners* (123 Misc. 236), referred to with disapproval in the

*Cunningham* case, was cited with approval by the Appellate Division in *Matter of Albrecht (supra).* A reading of the opinion of the court in the *Cunningham* case discloses a failure on the part of the Federal District Court to observe the important distinctions between a charging lien and a retaining lien which have been pointed out by the courts of this State in various cases previously cited and in many others.

The services rendered by the petitioner " through diplomatic channels " have unquestionably been of great benefit and value to the holders of bond certificates. They were performed with ability, skill and perseverance. They do not, however, meet the well-established requirements of a charging lien, and in so far as such a lien is sought to be declared for the value of the services performed " through diplomatic channels," the motion must be denied.

The other services of the petitioner, previously referred to, namely, those performed in resisting the claim of the Friends of Irish Freedom and in obtaining a direction by the Appellate Division that the receivers retain the bond certificates filed with them, in the absence of specific requests for their return, stand, however, upon a different basis. Counsel for the receivers concede in their brief that these services were " very valuable  *  *  *  to the Receivers  *  *  *  and to the Receivership." For these services the petitioner is entitled to a substantial allowance payable out of the balance now in the hands of the receivers. This allowance, as well as the other administration expenses, have been fixed upon a companion motion of the receivers decided simultaneously herewith.

The petitioner is entitled to a retaining lien upon all bond certificates filed by the Hearn committee with the receivers for the reasonable value of the services performed by him in inducing the Irish Free State to pay to the bond certificate holders the balance still remaining due on their certificates. The certificates filed by the Hearn committee are constructively in the possession of the petitioner as attorney for that committee. The certificates were filed with the receivers by the petitioner, and he is entitled to have the receivers return them to him. He is, however, not entitled to a retaining lien upon bond certificates filed with the receivers by holders who did not deposit their certificates with the Hearn committee. It may be that by filing their certificates with the receivers such holders became defendants in this action. This would, *at most,* authorize the petitioner to represent such holders in connection with any steps or proceedings taken in this action. The mere filing of their certificates with the receivers, for the

purpose of obtaining their distributive shares of the funds in the possession of the receivers, could not, however, confer upon the petitioner authority to represent such certificate holders in negotiations initiated by the petitioner with the Irish Free State, these being matters entirely extrinsic to the present action. Indeed, the very order of the Appellate Division, which directed the receivers to retain in their possession the certificates filed with them by claimants pending the further order of the court, provided that " If any claimant shall hereafter apply in writing to the receivers for a return to him of the bond certificate or certificates filed by him, the receivers shall stamp the same with a notation of the percentage paid by them thereon and return the same to him." This provision of the order indicates that the certificate holders are entitled to the return of their certificates from the receivers, thus negativing the existence of any lien upon such certificates.

The present motion is accordingly granted, only to the extent of (1) directing the receivers to turn over to the petitioner, to secure his retaining lien, the certificates filed by him with the receivers on behalf of the Hearn committee, and (2) awarding to the petitioner an allowance for the services rendered by him in resisting the claim of the Friends of Irish Freedom and in obtaining a direction from the Appellate Division that the receivers retain the certificates filed with them, pending distribution by the Irish Free State. In other respects the motion is denied. Submit order.