WEED SEWING MACHINE CO. *v.* W. A. BOUTELLE, TRUSTEE AND CLAIMANT.†

*Attorney's Lien. Service, Defects of Waived. Foreign Ins. Co. Trustee Process. Assignment, Notice of, to Ins. Co., how Given. Claimant. R. L. ss. 1073, 3608.*

1. Defects of service of process are cured by a full, unrestricted, and voluntary appearance by attorney.
2. A foreign insurance company doing business in this State is subject to the trustee process.

* No attorney's name was on the defendant's brief.
† Heard, August Term, 1882.

3. An assignment of a claim, without notice to the debtor, is ineffectual as against an attachment by trustee process, or a subsequent assignment to one without knowledge of the first transfer; and notice to a local insurance agent, or to the insurance commissioners, is not sufficient; but notice to a general agent is.*
4. Neither such local agent nor the insurance commissioners are authorized to receive notice of an attorney's lien.
5. An attorney has a lien upon a judgment for his reasonable fees and disbursements in the suit in which the judgment was rendered; and such lien will prevail over an attachment by trustee process; but not over an assignment made prior to the commencement of the suit.
6. When an attorney has a lien upon a judgment, it is presumed that a plaintiff in a trustee proceeding has knowledge of such lien; and he is affected with notice of it.
7. The court refuse to follow *Heartt* v. *Chipman*, 2 Aik. 162.
8. Distinction between a *charging* lien and a *retaining* lien.
9. If A assign a claim to B with a condition, after the condition has been performed there is no assignable interest in the claim.

TRUSTEE PROCESS. Heard on a commissioner's report, March Term, 1881, REDFIELD, J., presiding. Decision of the commissioner affirmed. Both parties appealed. The principal defendant recovered two judgments, one against the Westchester Insurance Company, and one against the Planters' Insurance Company, for loss by fire. Before judgment was rendered in the said two suits, the plaintiff commenced this trustee proceeding.

*C. W. Porter*, for the plaintiff.

The court had jurisdiction over the trustees. *Paul* v. *Virginia*, 8 Wall. 168; *Ins. Co.* v. *Morse*, 20 Wall. 445; G. S. c. 87, s. 5; *Osborne* v. *Ins. Co.*, 51 Vt., 282. No lien or claim exists in favor of the claimants as against the attachment. If there was an assignment, notice should have been given. *Ward* v. *Morrison*, 25 Vt. 593. They cannot rely on an attorney's lien, as such lien does not attach until a judgment is rendered. *Foot* v. *Tewksbury*, 2 Vt. 97; *Heartt* v. *Chipman*, 2 Aik. 162; *Walker* v. *Sargeant*, 14 Vt. 247; *Hutchinson* v. *Pettes*, 18 Vt. 614; *Hooper* v. *Welch*, 43 Vt. 169. Notice must be given of the lien. *Simmons* v. *Almy*, 103 Mass 33; *Hooper* v. *Welch*, 43 Vt. *supra*; *Averill* v. *Longfellow*, 66 Me. 238; *Coughlin* v.

* See *J. A. Wing* v. *Mrs. J. B. Woodward, post.*

*R. R.* 71 N. Y. 443. It extends only to taxable costs and disbursements. *Wells* v. *Hatch*, 43 N. H. 246; *Heartt* v. *Chipman, supra ; Forsyth* v. *Beneridge,* 52 Ill. 268; *Hough* v. *Edwards,* 1 H. & N. 171.

*J. A. & G. W. Wing* and *J. O. Livingston,* for Wing and Livingston, claimants.

The foreign insurance companies were not subject to the trustee process. *Rindge* v. *Green,* 52 Vt. 204; 6 Vt. 614. The attorney's lien is superior to the attachment. *Hutchinson* v. *Howard,* 15 Vt. 544; *Edson* v. *Sprout,* 33 Vt. 77; *Clafflin* v. *Kimball,* 52 Vt. 6; *Walker* v. *Sargeant,* 14 Vt. 247; 52 N. Y. 489. Notice is only required on a sale or assignment of the claim.

*C. J. Gleason* and *H. A. Huse,* for Mrs. Woodward, claimant, cited *Hough* v. *Edwards,* 1 H. & N. 171.

The opinion of the court was delivered by

Ross, J.  I.  The first question presented for consideration is whether the trustees are subject to the trustee process. They are both foreign corporations, who came into this State in compliance with our laws and effected the insurances, in regard to which they are sought to be held as trustees. Some question is attempted to be made as to whether the service which was made upon them was such as is required by statute. Whether service was made according to the provisions of the statute is wholly immaterial. They have voluntarily appeared by attorney, and so submitted to the jurisdiction of the court, if they were amenable to the process. It matters not whether they were ever served with process, so long as they are voluntarily present in court, by attorney, defending their rights. By repeated decisions of this court, all defects of service of process, and the entire want of it, are cured by a full, unrestricted appearance by attorney. Where the court has jurisdiction of the subject matter and the process, it matters not by what means

the party is brought before the court, provided he is in court, contesting his rights. Such appearance is submission to the jurisdiction of the court, answering the process, and waives all defects of service. Hence under this contention, the only question to be considered, is, whether being foreign corporations, doing business in this State under its laws, they are liable to be summoned as trustees. If they are not subject to the trustee process, the court was without jurisdiction to render judgment against them as trustees, and it was its duty to discharge them whenever and however, its want of jurisdiction was brought to its attention. *Rindge* v. *Green, Tr. & Cl.,* 52 Vt. 204.

Sec. 1073, R. L., provides : "No person shall be summoned as a trustee, unless at the time of the service of the writ he resides in the State. But debts due and owing from a person resident without the State, or from a number of persons, part or all of whom reside without the State, having an authorized agent resident in the State, may be attached and holden by trustee process ; and service of such process made upon such agent as provided for in service of writs of summons, shall be a sufficient notice to such trustees as reside without the State." It has been established by valid judgments of court that the trustees are each owing a debt to the defendant, arising from a contract of insurance effected by each of them in this State, on property here situate, through an agent resident in this State duly authorized to effect such insurance. Before service of process in this suit, the Planters' Insurance company had withdrawn their agency for doing business in this State, and the Westchester Insurance company had done so before the hearing, before the commissioner. The agent, whose agency was revoked, was authorized to transact insurance business, but not to accept service of process. The statute law, under which the indebtedness sought to be charged by the trustee process accrued—s. 3608 R. L.—reads : " An insurance company, not organized under the laws of this State, shall not do business in this State, until it has filed with the secretary of state a written stipulation, agreeing that legal process affecting the company, served on either of the insurance

commissioners shall have the same effect as if served personally on the company within this State; and such stipulation shall not be revoked or modified so long as any liabilities of the stipulating company to any resident of this State continue. Service of process according to such stipulation shall be sufficient service on the company." By this statute the agency, for transacting insurance business by such a corporation within this State, might be severed from the agency for service of process upon such corporation in suits predicated upon business done by it in this State. The former was revocable by the corporation at any time; the latter was irrevocable "so long as any liabilities of the stipulating company to any resident of this State continue." By giving the stipulation required by this statute, the trustees created the insurance commissioners their agents to receive service of process growing out of any liabilities they might incur to any resident of the State on business transacted under the stipulation in this State. They submitted to be *found* in this State, made themselves *quasi* residents, as to all such business and all liabilities growing out of it. *Osborne* v. *Shawmut Ins. Co.* 51 Vt. 278. We think they come, in regard to the business transacted by them under the statute, within the letter and spirit of s. 1073, subjecting them to the trustee process. The debts sought to be attached are due and owing from them, as non-resident corporations to a resident of this State, growing out of business transacted by them in this State by "an authorized agent resident in this State," under a stipulation that service of process in regard to all such business might be made on another authorized agent, whose authority should be irrevocable so long as any liability arising out of such business to any resident of this State should continue. The plaintiff is therefore entitled to hold the debts due from the trustees to the defendant, unless the claimants' rights are to prevail.

II. The condition of the assignment from the defendant to Davis, Roundy & Cole, of the debt due from the Planters' Insurance company was fully performed by the defendant to Davis, Roundy & Cole, before they transferred,—rather attempted to

transfer,—that assignment to Mr. Wing for the benefit of the wife of the defendant. They, Davis, Roundy & Cole, had, therefore, no interest in the debt, due from the Planters' Ins. Co., to the defendant, to transfer; and Mr. Wing in behalf of Mrs. Boutelle took nothing by such attempted transfer.

III. No notice was ever given to the trustees, nor attempted to be given, through A. C. Brown, their authorized agent, for the transaction of business in this State, or through the insurance commissioners, their agents to receive service of process in suits growing out out of such business, or otherwise, of the verbal assignment by the defendant of his claims against the trustees to Livingston and Wing to secure them for past and future legal services. The notice, given by Livingston on behalf of himself and Wing to Brown and to the insurance commissioners, was, that they had and claimed an attorney's lien upon any judgment that should be rendered against the trustees in favor of the defendant. An inspection of the authority conferred by the trustees upon A. C. Brown, conclusively shows that whatever power he had to approve of "transfers and assignments," he had no power to receive notice of an attorney's lien. His power to approve of transfers and assignments was manifestly confined to such transfers and assignments of policies as were made necessary by a change in the title of the property insured, and did not extend to approving of assignments of the indebtedness arising from a loss of the property insured. The authority conferred by the trustees upon the insurance commissioners under the statute was that of receiving in their behalf service of *legal process.* It did not include authority to accept notice of any kind affecting the trustees that was not included within the terms, "legal process affecting the company." Hence, the claim of Livingston and Wing upon the debts due from the trustees, rests upon the lien existing in favor of attorneys, both as against the trustee process and other assignments, duly made by the defendant and notice thereof given to the trustees. Their claim for a lien as attorneys will be considered hereafter. The verbal assignment by the defendant to them of the debts due from the trus-

tees, without notice to the trustees, did not serve to protect the debts from attachment by the trustee process, nor from subsequent assignments by the defendant, to an assignee who had no notice of the verbal assignment to them. The claim of Mrs. Woodward to a portion of the debts due from the trustees rests upon an assignment from the defendant, made subsequently to, and without notice of, the verbal assignment to Livingston and Wing, and so not affected by the prior verbal assignment to them, which, at most, without notice thereof to the trustees, was only valid between the defendant and them. Upon the principles already announced in regard to the authority of A. C. Brown and the insurance commissioners to receive notice of such assignment to affect the trustees so as to protect the debts from attachment or future assignment, no legal notice was given of the assignment by the defendant to her. The commissioner does not find in explicit terms that Mrs. Woodward paid the note to the bank in the interest of and to protect her husband's estate. But such is the legal inference to be drawn from what is found. She would therefore succeed to whatever right her husband had to have the note paid out of the debts due from the trustees. It is not found that the defendant formally assigned the policies from the trustees, nor the debts due thereon to Woodward to secure him against the payment of the bank note which he had signed for the defendant. It is found, that about the time of bringing the suits against the insurance companies, Woodward and Boutelle met A. C. Brown and the general agents of the trustees, and informed them of Woodward's contract with Boutelle, and that they claimed that the $1,000 for which he signed the note should be paid out of the insurance. This was prior to the commencement of this suit. When it is said "they" (Boutelle and Woodward) "claimed the $1,000 should be paid out of the insurance," it is equivalent to saying that Boutelle had, or then, assigned to Woodward so much of the insurance money as should be necessary to pay that note, and that Woodward gave the general agents of the trustees notice of the assignment. Notice to the general agents of the trustees was notice to the

companies themselves. No particular words, nor set of words, are necessary to assign a debt, or to give notice thereof to the debtor. *Dale* v. *Kimpton*, 46 Vt. 76. On these views Mrs. Woodward is entitled to hold a sufficient amount of the debts due the defendant from the trustees to reimburse her for taking up, with her own property, in behalf of her husband's estate, the bank note on which her husband was holden for the defendant. It is probable that the transfer to her husband and notice to the general agents were prior to any charges by Livingston and Wing in bringing or prosecuting the suits in favor of the defendants against the trustees; certainly, prior to any perfected lien in their favor, by judgment on the claims being prosecuted by them. It was long prior to the commencement of this suit.

IV. This brings us to the more difficult question of the extent of the lien of Livingston and Wing as attorneys, who have prosecuted to judgment the suits in favor of the defendant against the trustees. It is contended by these claimants that the plaintiff in a trustee suit, as against them, takes the place of and can only insist upon the same rights which the defendant could. Several decisions of this court can be found, in the reports, in which language of similar import is used. An inspection of the facts in regard to which such language is used, will show that no question was involved of the failure of the assignee of a debt to give notice to the trustee of the assignment. Repeated decisions can be found where it has been held, that such notice from the assignee is necessary to protect the debt against attachment by the trustee process, or against subsequent assignment, to a person who had no notice of the former assignment. These two classes of decisions must be considered, and the latter must govern where no notice of the assignment is given. Although the verbal assignment of these claims by the defendant to these claimants might be valid between them, without notice thereof to the trustees, it was not valid against subsequent *bona fide* assignments for value. or attachment by the trustee process. There is therefore left for consideration their lien as attorneys. It seems to be well settled at common law that an attorney's lien

is of two kinds—a possessory or *retaining lien* and a *charging lien*. The former attaches to all papers, documents, and money that come into his hands professionally as an attorney without any special contract in regard to the same. Having the possession, he has the right to retain them against his client, assignments, or attachments, until the general balance due him for legal services is paid. The client cannot discharge him and withdraw such papers or money from his hands without first paying the general balance due him for legal services, whether growing out of the special matters then in his hands, or other legal matters. This right is said to have its origin partly in custom and partly to prevent circuity of action. Whar. Ag. s. 623 to 625, and cases cited in the notes; *Hutchinson* v. *Howard*, 15 Vt. 544; *Hurlbert* v. *Brigham & Waterman*, ante, 368; *Sterling, ex parte*, 16 Ves. 258; *Bennett* v. *Cutts*, 11 N. H. 163; *Wright* v. *Cobleigh*, 21 N. H. 339. Having possession of the thing, to which the lien attaches, no notice is required to protect it against assignment by the client or attachment by trustee process by his creditors. *Hutchinson* v. *Howard, supra*. In short, no one could be effectually trusteed in regard to the same except the attorney. The charging lien, at common law, is the right of an attorney or solicitor to recover his taxable costs from a fund recovered by his aid, and also the right to have the court interfere to prevent payment by the judgment debtor to the creditor in fraud of his right to the same, and also to prevent or set aside assignments or settlements made in fraud of his right. It does not usually attach until the recovery of judgment, and then does not prevent an honest settlement, nor a payment to his client until the attorney has notified the debtor of his intention to claim a lien. Whar. Ag. s. 626 to 630; *Welsh* v. *Hole*, 1 Doug. 238; *Griffin* v. *Eyles*, Bl. H. 122; *Turnin* v. *Gibson*, 3 Atk. 720; *Heartt* v. *Chipman*, 2 Aik. 162; *Foot* v. *Tewksbury*, 2 Vt. 97; *Walker* v. *Sargeant*, 14 Vt. 247; *Hutchinson* v. *Howard*, 15 Vt. 544; *Hutchinson* v. *Pettes*, 18 Vt. 615; *Hooper* v. *Welsh*, 43 Vt. 169.

*Welsh* v. *Hole* is usually referred to as a leading case at com-

mon law, in which Lord MANSFIELD says: " An attorney has a lien on the money recovered by his client for his bill of costs; if the money come to his hands, he may retain to the amount of his bill. He may stop it *in transitu* if he can lay hold of it. If he apply to the court, they will prevent its being paid over till his demand is satisfied. I am inclined to go farther, and to hold that, if the attorney gave notice to the defendant not to pay till his bill should be discharged, a payment by the defendant after such notice would be in his own wrong, and like paying a debt that has been assigned, after notice." It will be seen that he speaks of both the retaining lien and the charging lien. Failure to distinguish the two has led to considerable apparent confusion, not to say conflict, in the decisions on this subject. The charging lien has never been extended beyond the charges and fees in the suit in which the judgment was recovered. It does not extend to the general balance due the attorney from the client for professional services. At common law it was confined to an attorney or solicitor, and to his taxable costs in the suit. But the taxable costs were what the attorney or solicitor had a right to recover from his client. Before he could maintain a suit against his client he must have his costs in the suit taxed by the court, and the sum thus taxed was the extent of his right of compensation for his services and disbursements in the suit. Bac. Ab. Attorney; *ex parte Sterling, supra.* As counsel could maintain no action for his services in the suit (3 Bl. Com. 28), no lien existed in his favor. Nevertheless, counsel did not perform services in a suit without remuneration. Doubtless, the attorney. who alone had to do with the counsel for his client, often advanced to the counsel his compensation, and the same was taxed as the attorney's disbursement in the suit. Thus, at common law, an attorney's charging lien upon a judgment recovered by him was placed upon the same ground as that in favor of any artisan—a tailor or blacksmith—who had performed services upon property committed to his care. Each had a lien thereon to the extent of the value of the services performed. The artisan's lien was the right to retain the property on which

the services were performed, and in this respect analagous to the attorney's retaining lien. No good reason can be given for limiting an attorney's charging lien to what under our law are the taxable costs in favor of his client in the suit. If he is to be given a lien at all upon a judgment recovered by his services, it should be to the extent of the value of his services in the suit. His services are presumed to have been skillfully performed, and valuable because so performed. They enhance his client's claim presumably to the extent of the value of his services, the same as the tailor's services, in manufacturing a patron's cloth into a coat, enhance the value of the materials to the extent of the value of his services. We are aware that the decisions in this country are not uniform on the extent of an attorney's charging lien. In some states it is held to cover his reasonable charges and disbursements in the suit, while in others it is limited to the amount of costs taxable in favor of his client in the suit. But these are what the law allows to be recovered in favor of the prevailing party. They are taxed between party and party, and not between attorney and client, and are in no sense the measure of the value of the attorney's services and disbursements in the suit. They include frequently, court, clerk, witness, and officer's fees, in the suit, which the client has advanced. I cannot help thinking that this class of decisions has their origin in not observing the distinction between taxable costs, which, at the common law, was a taxation between the attorney or solicitor and his client, and taxable costs under our statutes, which is a taxation in favor of the recovering *party* against the defeated party. We are aware that this court in the early case of *Heartt* v. *Chipman, supra,* while holding that the distinction between attorney and counsel did not exist in this State, but both were combined in the office of an attorney at law, and also that an attorney has a lien upon a judgment recovered by him which his client could not assign to his detriment, still held that this lien was confined to the taxable costs in the suit. This decision has never been overruled, that we are aware of, although it is said in *Welch* v. *Hooper, supra,* by Judge WILSON : "An attorney has a lien

upon a judgment recovered through his agency for his reasonable fees and disbursements." This is what he is entitled to recover against his client. But no allusion is made to *Heartt* v. *Chipman ;* nor was the extent of an attorney's lien upon the judgment involved in the decision of *Welch* v. *Hooper.* But the decision of *Heartt* v. *Chipman,* is in this respect so far contrary to reason, to the common law, and to the fundamental principles underlying the law of liens generally, that this court refuse to follow it; but hold that the attorneys, Livingston and Wing, have a lien upon the judgments recovered through their agency against the trustees for their reasonable fees and disbursements in these suits. Whether this court would adopt the decision in *Heartt* v. *Chipman* to its full extent in other respects, it is unnecessary to inquire or announce. It is there held, that if the assignee of a judgment, who has not been notified by the attorney that he claims a lien thereon for his services, collects the same, he holds the money to the extent of the attorney's lien to the latter's use; and that the attorney can recover the same from him under the common money counts in assumpsit. This suit was commenced while Livingston and Wing were in active prosecution of the suits in favor of the defendant against the trustees, in which the judgments were recovered for which the trustees are chargeable. The plaintiff therefore knew that the services of these claimants were being rendered in behalf of the defendant to perfect his claims against the trustees by judgment. It is presumed to know that the law gave them a lien on the judgments, when recovered, for such services and disbursements. It must be held affected with notice of their right to claim and enforce such lien. It only acquired, as against them, the same right to hold the judgment and take the fruits thereof, which the defendant himself had.

The result is that the *pro forma* judgment of the County Court is reversed, and judgment is rendered that each trustee is liable for the amount found by the commissioners against it less its costs in this suit; that of said amount Mrs. Woodward hold enough to satisfy the claim found in her favor to its full extent;

that the claimants, Livingston and Wing, hold the balance of said amount, and that the claimants recover their respective costs against the plaintiff.