DAVID P. BROWN

*v.*

FRANCIS C. ELY et al.

[Submitted April 26th, 1921.   Determined May 6th, 1921.]

Where the buyer of a lot, on account of the seller's attitude and the consequent course of dealing of the parties with reference to the contract, was justified in believing that it was not necessary for him to pay installments promptly, the buyer was entitled to notice from the seller of a change of attitude on his part, or a notice that his rights would be terminated unless he should promptly make payment of the final balance due, and without such notice the seller could not declare a forfeiture, even though the written contract made time its essence.

---

On final hearing.   On bill for specific performance.

*Messrs. Avis & Avis,* for the complainant.

*Mr. Austin H. Swackhamer,* for the defendant.

LEAMING, V. C.

It may be here assumed that the parties to a contract for the sale of real estate are privileged to contract that the time stipulated for payment of the purchase price shall be deemed essential, to the end that failure of the purchaser to pay at the time named shall terminate his right to enforce the contract.

It is a wholly different and independent question whether in such a contract in which the payments are to be made in a series of installments a failure to pay an installment on a stipulated day will be operative to forfeit all prior payments under a clause of the contract providing that in case of default the amount theretofore paid shall be deemed liquidated damages; in such circumstances the drastic or unconscionable stipulated effect of a failure to pay a relatively insignificant and perhaps final installment on the day named may well justify a court in regarding the forfeiture clause a penalty and unenforceable as such.

In this case the right of defendant to retain the moneys paid is not involved. The question here presented is whether time is so far the essence of the contract as to deny to complainant the right to its specific enforcement.

In contracts of the nature of the one here in question time is not of the essence of the contract unless made so by the terms of the contract, or by circumstances of the case which are not here present. In this contract, however, it is specifically stipulated that time of payment is to be regarded as of its essence.

But while the parties are privileged to make a binding stipulation of that nature, they are equally privileged to unmake it after it has been made.

The present contract made the purchase price of the lots $300. It stipulated that $10 should be paid in cash at the signing of the contract, and that the balance should be paid in monthly payments of $6 each until the full purchase price should be paid. The initial payment of $10 was made pursuant to the contract, and thereafter eighteen payments were made and accepted by the vendor in practically total disregard of the stipulations of the contract touching the times and amounts of payment. These several nineteen payments embraced a period from June 10th, 1915, the date of the contract, to February 11th, 1919, and left

a balance of $56.50 due under the contract according to the testimony of defendant taken from his books of account. Except the original deposit of $10 no single payment was made at the time called for by the contract and only one payment appears to have been for $6 called for by the contract as the amount to be paid monthly. A number of the payments were credits given to complainant for work performed for defendant. At no time did the aggregate amount of the payments and credit for work equal the amount due under the contract. Soon after the contract was made complainant, with defendant's acquiescence, erected a small bungalow on the lots and thereafter enjoyed possession until defendant declared a forfeiture of the contract, in 1919, for the $56.50 unpaid balance of the contract price, at which time defendant took possession. During all that period complainant and defendant were on friendly terms, and complainant claims that defendant gave no indication of dissatisfaction further than saying at times, "You are getting a little behind," "I want a little money," or similar remarks, and when told by complainant that he could not arrange to pay each month, said, "All right, we will manage with that." Defendant, on the contrary, claims to have written complainant in April, 1916, threatening forfeiture for delinquency, and again in February, 1919. Carbon copies of these letters were produced by defendant, but complainant is positive that he never received either of these letters. But whether the letters were received or not payments irregular in amount and time continued as before after the letters of April, 1916, and one payment of $36 was made after the date of the letter of February, 1919. The latter letter fixed a date on which forfeiture was threatened unless the overdue amount should be then paid and a payment appears to have been made and accepted on that date for less than the amount. After the February, 1919, payment of $36, no further payments were ever made or demanded, and in November defendant, without further warning, declared a forfeiture.

From all the testimony it seems clear that the attitude of defendant in relation to this contract, and the consequent course of dealing of the parties with reference to it, was such as to fully justify complainant in the confident belief which he undoubtedly

entertained that it was not necessary for him to pay promptly. It cannot be reasonably doubted that complainant fully believed that he was privileged by defendant to disregard the contract terms touching prompt payment; it seems equally impossible to doubt that defendant's assurances to complainant, express and implied, not only occasioned that confident belief but justified it. In these circumstances complainant was at least entitled to notice from defendant of a change of attitude on his part or a notice that his rights would be terminated unless he should promptly make payment of the then small final balance due. But without warning to complainant the letter of defendant of November, 1919, notified complainant that his rights had been forfeited. Even should it be assumed that complainant received the warning letter of February, 1919, the payment by him of $36 and its acceptance by defendant on the day named in that letter —a payment of less than the amount then due—appropriately justified complainant's belief that the old relations and course of dealings were re-established. It seems impossible to doubt the truth of complainant's statement, to the effect that had he been apprised of a change of attitude of defendant touching his requirements under the contract he would have raised the small final amount due; and it seems equally impossible to doubt that the change of attitude of defendant touching the extension of credit and his determination to terminate or forfeit the contract in November without warning may have been stimulated by his opportunity to dispose of the property to advantage.

My conclusion is that the terms of the contract here in question, in so far as they may be said to have privileged defendant to terminate the contract without notice to complainant by reason of delinquency in payment became inoperative and unenforceable by defendant without notice to complainant by reason of the fact that the negotiations and long continued course of dealings of the parties under the contract fully justified complainant in acting under that assumption.

Complainant elects to accept a decree for specific performance, subject to the rights of Mrs. Gallagher, as lessee, with option of purchase. Such an election is permissible; so long as the decree

directs performance only so far as defendant is able to perform, the rights of others are not disturbed.

A decree of that nature will be advised. Defendant will account for any rents received under the Gallagher lease. Unless the amount can be agreed upon a reference will be made.