RICHARD J. NORRELL, complainant-respondent,

*v.*

RAYMOND CHASAN, defendant-appellant, and ELNORA (or ELINORA) SMITH, WILLIAM A. BYRD, as executor and trustee under the last will and testament of Margaret Ethridge, deceased, and CHARLES H. ETHRIDGE, defendants.

[Submitted October term, 1938. Decided February 6th, 1939.]

*Mr. Richard Doherly,* for the defendant-appellant.

*Mr. Robert S. Hartgrove,* for the complainant-respondent.

The opinion of the court was delivered by

HEHER, J.

The single point in contention is whether appellant, Chasan, an attorney-at-law and solicitor in chancery, has a lien on funds in his possession belonging to the defendant Elnora Smith for unsatisfied fees for professional services rendered to her.

These moneys, $1,576.45, came to this defendant as the beneficiary of a policy of insurance issued by the Prudential Life Insurance Company upon the life of her deceased sister, Margaret Ethridge. The latter died testate. She bequeathed all her personal property and devised a life interest in certain real estate to Smith. Before the probate of the will, the testatrix' husband, Charles H. Ethridge, filed a bill in equity to have it decreed that he was the absolute owner of all real and personal property held by his deceased wife at the time of her death, and that the will should be denied probate for reasons not pertinent to this inquiry. The named insurer filed a bill of interpleader, and paid the proceeds of the policy into the court of chancery. The defendant Smith was, of course, joined as a party to these proceedings; and she retained appellant, Chasan, to interpose such pleadings as might be necessary to safeguard her interests, and to represent her throughout the litigation. So far as is disclosed, Chasan fulfilled the duty thus undertaken.

It was ultimately decreed that complainant Ethridge had not established his asserted ownership of the personal property so held by his wife, or his right to the proceeds of the insurance policy adverted to; that his deceased wife's will dated July 19th, 1930, was "valid and effectual only to the extent" that it disposed of "the personal estate of which" she "died seized or possessed," and "invalid and void" so far as it "attempted to devise or transfer title" to certain lands therein identified, which were "declared and determined to be the property in fee-simple absolute of the said Charles H. Ethridge;" that a paper-writing dated May 19th, 1917, purporting to be the last will of Margaret Ethridge, "be declared null and void;" and that the defendant Smith was entitled to the insurance moneys, and that the sum so paid into court, less the clerk's commissions, be paid to her, "or to Raymond Chasan, her solicitor."

In consonance with this provision of the decree, the deposited insurance moneys were turned over to Chasan. Asserting an express undertaking by his client to pay him one-third of her "total interest in suit," in consideration of the services thus bargained for, he claimed a fee of $1,164.62, and tendered the difference, $411.83. This fee was calculated on the basis of a total personal estate of $3,493.87, including the insurance moneys and certain death benefits. The tender was refused. In the instant proceedings, Smith denied the asserted undertaking as respects the *quantum* of the fee for the services to be rendered. The obligation she assumed, so she testified, was to pay the reasonable value of the services.

Meanwhile, in June, 1933, the complainant herein, the undertaker who conducted the funeral of the deceased Ethridge, brought an action at law against Smith and the deceased's husband for the recovery of the funeral bill. He pleaded that Smith had contracted for the service, and individually had undertaken the payment of the charge therefor. The amount of the bill was $660; $150 had been paid on account; and the action was brought to recover the balance. Service of process seems to have been made in due course. Ethridge answered, but Smith did not. No further proceed-

ings were had until September 18th, 1934, shortly after Chasan submitted his bill for services rendered in the litigation referred to. A rule was entered directing Smith to plead to the complaint within five days. Shortly thereafter, there was filed in the cause an "affidavit" made by Smith, acknowledging a debt of $501.29 and consenting to judgment in that amount. Judgment was accordingly entered against her, and proceedings were thereupon instituted for the satisfaction of the judgment out of the moneys in Chasan's possession. The Hudson Common Pleas ruled that Chasan was entitled to retain but $525.49 for his services, and entered an order directing the liquidation of the judgment from the balance. Pointing out that this order was made without proof, and that Chasan had not admitted the possession of sufficient moneys of the judgment debtor to satisfy the debt, the supreme court on *certiorari* set aside the order as in excess of jurisdiction. *Chasan* v. *Court of Common Pleas, 13 N. J. Mis. R. 300; 178 Atl. Rep. 61.*

By the bill filed in the case at hand, the judgment creditor seeks an accounting by the executor of the deceased Ethridge, and a decree that Chasan holds the moneys thus turned over to him "in trust and for the benefit" of Smith, subject to "a first lien" thereon in favor of complainant for the moneys due upon his judgment, and for payment of the same to him, and that complainant also has "a prior and first lien on the proceeds" of the estate of the deceased "for payment of his said judgment debt."

The learned vice-chancellor concluded that Chasan's claim of "an attorney's lien on the funds" in his hands "is untenable since a lien exists only by statute;" that the Attorney's Lien act of 1914 (*P. L. p. 410; R. S. 1937, 2:20-7*) "specifies the conditions under which such a lien exists and limits it to cases in which the person claiming it files a bill in an action at law or equity or files a counter-claim in an action at law;" that this act "should not be extended beyond its terms" (citing *McCarthy* v. *McCarthy, 117 N. J. Eq. 22*); that Chasan therefore holds the fund "as trustee for the benefit of Elnora Smith and complainant," who "are entitled to payment

therefrom;" and that the estate of Margaret Ethridge is chargeable "to the extent of Elnora Smith's interest therein with payment of any balance remaining uncollected from" Chasan. He deemed it unnecessary to determine whether the sum claimed by Chasan "is excessive," and so made no finding in that regard. It suffices to say as to this, that the asserted contract respecting fees is one to be closely scrutinized to safeguard the client against overreaching by the attorney. See *Schomp* v. *Schenck, 40 N. J. Law 195.*

The determination thus made did not take into account the essential difference between an attorney's general, possessory, or retaining lien and what has been commonly termed a charging or special lien.

Unless excluded by special contract or inconsistent with the particular service, the general or retaining lien attaches to all papers, books, documents, securities, moneys and property of the client coming into the possession of the attorney in the course of, and with reference to, his professional employment, and confers the right to retain possession thereof until the general balance due him for legal services, as well as costs and disbursements, shall have been paid. It is not limited to the moneys due in the particular cause out of which possession of the property came; it embraces all such indebtedness arising out of other matters in which the professional relation existed between them. *Delaney* v. *Husband, 64 N. J. Law 275; Pennsylvania Fire Insurance Co.* v. *Rinaolo, 108 N. J. Eq. 167; In re Woodworth, 85 Fed. Rep. (2d) 50; Webster* v. *Sweat, 65 Fed. Rep. (2d) 109; In re Stronge & Warner Millinery Co., 33 Fed. Rep. (2d) 1001; Everett, Clarke & Benedict* v. *Alpha Portland Cement Co., 225 Fed. Rep. 931; Pritchard* v. *Fulmer, 22 N. M. 134; 159 Pac. Rep. 39; 2 A. L. R. 474; Reynolds* v. *Warner, 128 Neb. 304; 258 N. W. Rep. 462; 97 A. L. R. 1128; Robinson* v. *Rogers, 237 N. Y. 467; 143 N. E. Rep. 647; 33 A. L. R. 1291; In re Heinsheimer, 214 N. Y. 361; 108 N. E. Rep. 636.*

This lien has its roots in the common law. *1 Chit Arch. Pr. (12th Ed.) 135 et seq.* It is said to have had its origin

"partly in custom and partly to prevent circuity of action." *Prichard* v. *Fulmer, supra; Weed Sewing Machine Co.* v. *Boutelle, 56 Vt. 570; In re Stronge & Warner Millinery Co., supra; Welsh* v. *Hole, 1 Doug. 238; Bozon* v. *Bolland, 4 Myl. & C. 354.* It does not depend upon an express agreement. While it has been classified as "an implied contract by law," it is founded "on general principles of justice," and its effectuation has been termed the exercise of "the inherent power of courts over the relations between attorneys and their clients." *Everett, Clarke & Benedict* v. *Alpha Portland Cement Co., supra.* It is grounded in possession—ordinarily, a characteristic of the common law lien—and is lost with the surrender of the money or property to which it has attached.

The special or charging lien, on the other hand, arises in favor of the attorney for his services in procuring a judgment, decree, or award for his client. While recognized at common law, it is not a lien in the true sense, for under the common law system such a lien is generally a right resting in the possession, actual or constructive, of the thing upon which it operates. Originally, it attached to the judgment for the attorney's bill of costs. Later, it was extended to embrace also the attorney's compensation for his services in procuring the judgment, decree, or award. *Brown* ads. *Hendrickson, 39 N. J. Law 239; Braden* v. *Ward, 42 N. J. Law 518; Terney* v. *Wilson, 45 N. J. Law 282; Phillips* v. *MacKay, 54 N. J. Law 319; Delaney* v. *Husband, supra; Pride* v. *Smalley, 66 N. J. Law 578; Prichard* v. *Fulmer, supra; Andrews* v. *Morse, 12 Conn. 444; Reynolds* v. *Warner, supra; Rooney* v. *Second Avenue Railroad Co., 18 N. Y. 368; Marshall* v. *Meech, 51 N. Y. 140; Weed Sewing Machine Co.* v. *Boutelle, supra; Everett, Clarke & Benedict* v. *Alpha Portland Cement Co., supra; 1 Chit. Arch. Pr. 139 et seq.*

The right thus given the unpaid attorney is rooted in equitable considerations. Baron Parke termed it "merely a claim to the equitable interference of the court to have that judgment held as security" for the attorney's "debt." *Barker* v. *St. Quintin, 12 Mees. & W. 441; 152 Eng. Reprint 1270.*

And Chief-Justice Cockburn described it as "only a claim or right to ask for the intervention of the court" for the attorney's "protection, when, having obtained judgment for his client, there is a probability of the client depriving him of his costs." *Mercer* v. *Graves, L. R., 7 Q. B. 499.* It is a judicial device set up "for the protection of attorneys against the knavery of their clients, by disabling clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained." *Goodrich* v. *McDonald, 112 N. Y. 157; 19 N. E. Rep. 649.* It was designed "to save the attorney's rights where he had been unable to get possession;" and it "cannot exist, unless it is an element, express or implied, of the agreement that the lawyer is to be paid out of the fruits of the judgment." *In re Heinsheimer, supra.* The attorney is considered an equitable assignee of the judgment to the extent of his debt. *Bozon* v. *Bolland, supra; Weed Sewing Machine Co.* v. *Boutelle, supra; Marshall* v. *Meech, supra.* And the enforcement of the right is within the equitable jurisdiction of courts of law. *Phillips* v. *MacKay, supra; Brown* ads. *Hendrickson, supra; Terney* v. *Wilson, supra; Delaney* v. *Husband, supra.* See, also, *Kristeller* v. *First National Bank, 119 N. J. Law 570.*

At common law, the charging lien, so-called, by its very nature, attaches to the judgment only; it does not embrace the cause of action itself. And the primary object of the Attorney's Lien act of 1914, *supra,* was to create, after the institution of an action at law or suit in equity, as the case may be, or the filing of a counter-claim in an action at law (the current revision also includes counter-claims in equity), a special charging lien for compensation upon the client's "cause of action, suit, claim or counter-claim," as well as the "verdict, report, decision, decree, award, judgment or final order in" the client's favor, and to safeguard it against "settlement between the parties before or after judgment or final order or decree."

Whatever may have theretofore been the rationale and range of the rule in this state, this enactment enlarged the common law rule as regards such charging liens to include

the client's "cause of action, suit, claim or counter-claim." The remedy thus given is plainly cumulative and not exclusive of the attorney's pre-existing common law general or retaining lien. The enactment does not purport to abrogate or modify this common law retaining lien; nor is such a purpose fairly to be implied. And so, in proceeding on the contrary premise, the learned vice-chancellor fell into error.

The decree is accordingly reversed *pro tanto;* and the cause is remanded for further proceedings in conformity with this opinion.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, WALKER, JJ. 15.