This is a suit for the specific performance of a contract and for an accounting.
The defendant held judgments against Harris Nevin in the sum of $30,168.38, and against William Nevin in the sum of $7,438.81; and, also, claims against Nevin Transit, Inc., Nevin Midland Lines, Inc., and Silver Dart Lines, Inc. On December 20th, 1935, it made an agreement (Exhibit C-2) with Harris and William Nevin, whereby it agreed to accept the sum of $10,500 in full settlement of those judgments against those two individuals and of the claims against the three corporations. Under the terms of that agreement, sums aggregating $7,000 were paid to the defendant for which it then gave to the complainants, who claim to be all of the stockholders of the three corporations, an assignment of the judgment against William Nevin (Exhibit C-3). For the balance of $3,500 due under that agreement the complainants gave to the defendant an assignment for that amount out of a payment of $25,000 to become due to them on February 1st, 1936, under an agreement (Exhibit C-1) with Luther B. McEwing who contracted to purchase their stock holdings in the three corporations; the purchase price for the stock being the sum of $125,000. McEwing, at the time of the execution of the contract, paid complainants on account, the sum of $50,000; the balance of $75,000 was to be paid in installments.
The assignment for the $3,500 was executed by William Nevin as attorney in fact of the complainants (Exhibit C-4), and upon its delivery to the defendant, it, the defendant, handed the complainants an assignment of the William Nevin judgment. Under the terms of the agreement of December 20th, 1935 (ExhibitC-2), the defendant stipulated that when it received the $3,500 due under the assignment, it would then execute to the complainants, assignments of the Harris *Page 111 
Nevin judgment and the claims it held against the Nevin Transit, Inc., Nevin Midland Lines, Inc., and Silver Dart Lines, Inc.
Shortly after the execution of the agreements, the Nevin Midland Lines, Inc., and the Nevin Transit, Inc., filed petitions for reorganization under section 77-B of the National Bankruptcy act of the United States, in the district court for the southern district of New York. As a consequence, the $25,000 payment due the complainants from McEwing on February 1st, 1936, was not made. In the reorganization proceedings in the United States district court, the defendant filed proofs of its claims against the aforesaid corporations, they being the same claims which it had, on December 20th, 1935 (Exhibit C-2), agreed to assign to the complainants upon payment of the sum of $3,500. On February 2d 1938, the defendant received from the trustee in the reorganization proceedings in the United States district court, a dividend due on the proofs of its claims. The complainants now seek an accounting from the defendant of those moneys.
The defendant does not deny the execution of the agreement, and the receipt of the dividend in the reorganization proceedings in the United States district court; but it contends that the bill should be dismissed because:
"(1) There was a lack of necessary parties in that Harris and William Nevin are not joined;
"(2) There is no proof that the complainants are entitled to maintain this suit because it has not been shown:
"(a) That there was proof that the complainants had any interest entitling them to maintain this suit in the contract;
"(b) That the complainants were stockholders of the various corporations referred to in the first paragraph of the agreement of December 20th, 1935;
"(c) Nor has it been shown who the various corporations are;
"(d) On the other hand it has been adjudicated that the complainants were not stockholders of the corporations they allege to hold stock in.
"(3) That specific performance should be refused because Harris and William Nevin and the complainants (assuming *Page 112 
that they are the parties meant by the contract) defaulted in the performance of the contract of December 20th, 1935.
"(4) There is a full, adequate and complete remedy at law, and therefore, this court should refuse jurisdiction in this case.
"(5) The relief asked for should be denied on the ground of laches."
The defendant's objections will be considered in the order in which they have been raised. Under the first objection, that there is a lack of necessary parties, it, the defendant, argues that the complainants' suit rests on a written contract dated December 20th, 1935, wherein it is a party, while Harris and William Nevin are the only other parties; the payments due thereunder were to be made by Harris and William Nevin. The complainants deny that Harris and William Nevin are necessary parties; and assert that they, Harris and William, were not to receive any benefit under the contract; that the contract was partially performed by both the complainants and the defendant, and all that remained to be done thereunder was the payment of $3,500, after which the defendant was to execute to the complainants an assignment of the claims, and of the judgment against Harris Nevin (Exhibit C-2). I feel there is merit in the complainants' contention that while Harris and William may be proper parties, they are not necessary parties. It is the rights of the complainants under the contract which are in issue and not those of Harris and William Nevin.
The bill of complaint seeks the execution of the assignment of defendant's claims against Harris and William Nevin in favor of the complainants, and not in favor of either Harris or William Nevin. The bill further prays that the defendant account to the complainants for any moneys received by it on account of the claims which the defendant agreed to assign to them. Where the party not joined is merely a proper party, the defendant's objection must be taken in limine. Wilson v. American PalaceCar Co., 67 N.J. Eq. 262; 58 Atl. Rep. 195. See chancery rule 13.
The law is well settled that necessary parties are those who are indispensable to the suit. There is quite a distinction *Page 113 
between necessary and proper parties. The distinction is clearly expressed in the opinion of Vice-Chancellor Pitney in Fletcher
v. Newark Telephone Co., 55 N.J. Eq. 47 (at p. 51);35 Atl. Rep. 903, where the vice-chancellor, among other things, said:
"A still better definition, perhaps, is that of Mr. Justice Thomas in Bank v. Gardner, 3 Gray 308, thus: `The general doctrine in relation to parties in equity is often stated to be that all persons interested in the subject-matter of the suit should be made plaintiffs or defendants. This statement is too broad. It would be more accurate to say persons interested in the object of the suit must be made parties — that is, persons who are parties to the interest involved in the issue, and who must necessarily be affected by the decree.'"
The second objection raised by the defendant is: there is no proof that the complainants are entitled to maintain this suit because (a) there was no proof that the complainants had any interest entitling them to maintain this suit in the contract. It was encumbent upon the defendant to raise that objection in the early stage of the proceedings. Its answer to the bill does not raise this objection. The answer contains no allegation that the complainants were without interest in the litigation. If the defendant felt that the complainants were not entitled to institute these proceedings because of want of interest, it should have questioned the complainants' right by motion to strike the complaint before it filed its answer, or it should have moved in limine for a dismissal of the suit. InHenderson v. Champion, 83 N.J. Eq. 554 (at p. 556);91 Atl. Rep. 332, the court said:
"Besides, an objection for misjoinder of parties, first made on final hearing, will be regarded as immaterial where it appears that no injustice will be done the parties by the decree. It should have been pleaded. Story Eq. Pl. § 544."
This precise situation was presented in the case of Baird v.The Board of Recreation Commissioners, 108 N.J. Eq. 91 (at p.112); 154 Atl. Rep. 204, wherein the court held:
"Furthermore, the contention that he has no such right cannot now be made. It came too late. The defendants filed *Page 114 
their answer, making no objection to the pleadings or to the right of complainant to institute the suit. Nor was a motion made to dismiss the bill of complaint. Months elapsed before the case was reached on final hearing. Our Chancery act (P.L. 1915 p. 196§ 59; chancery rule 75; Objections to Pleadings) provides: `All objections to pleadings must be made by motion. Five days' notice of such motion must be given within the time limited for filing and answering pleading, and the notice must state the particular grounds of objection.' In the case of Tipton v. Randall,86 N.J. Eq. 387, Chancellor Walker held that a party will not be permitted to move to strike out after he has pleaded to the merits. I quote from the chancellor's opinion: `* * * it follows that the motion to dismiss the bill in this case, made after the time for answering had expired and when an answer already put in had been overruled, with permission only to file an amended answer, came too late, and the complainants had a right to disregard it * * *.'"
Under subparagraph (b) of the second objection by the defendant that there is no proof that the complainants are entitled to maintain this suit because it has not been shown they were stockholders of the various corporations referred to in the first paragraph of the agreement of December 20th, 1935, the defendant there appears "to be skating on thin ice." Under paragraph four of the agreement (Exhibit C-2) it appears that "upon payment of $7,000 an assignment of the judgment against William Nevin shall be given to the stockholders of the corporations referred to in paragraph first of this agreement, the consideration therefor being the consent of said stockholders to the assignment to the judgment-creditor [the defendant] in the sum of $3,500." The defendant received the $7,000, whereupon it executed to the complainants an assignment of the judgment against William Nevin (Exhibit C-4). In this assignment the complainants are individually mentioned as the assignees. I am in accord with the contention of the complainants that even though they were not stockholders, since the defendant agreed to do certain things for them in consideration of their doing *Page 115 
certain other things, that irrespective of what their title or status may have been, if there were merit in their claim, they would be entitled to consideration regardless of the propriety of their title as stockholders.
An examination of the agreement (Exhibit C-2) discloses that the defendant was to be given an assignment of $3,500 out of the fund which was to be paid to the complainants on a sale "of their respective stockholdings." That provision in the contract very largely tends to prove the defendant knew the complainants were stockholders of the companies; it demanded, in the agreement, that the complainants execute to it an assignment of the moneys which they were to receive from the sale of their stock (ExhibitC-1) in the Nevin Transit, Inc., Nevin Midland Lines, Inc., and Silver Dart Lines, Inc. In this disputed point, the court is particularly concerned with whether the complainants were intended to be the parties to whom the defendant agreed to execute the various instruments. Considering all the circumstances, I am satisfied that the defendant had in mind, at the time it became a party to the agreement, these complainants.
The defendant's objection raised in subdivision (c) of the second objection that there is no proof that the complainants are entitled to maintain this suit because it has not been shown who the "various corporations" are, is hereinabove discussed, and has been considered.
Under subdivision (d) of the second objection, defendant asserts that the complainants are barred from maintaining this suit because it has been adjudicated that they were not stockholders of the corporations mentioned in the bill of complaint. While the defendant has raised that question in its answer there is nothing in the nature of proof in the record to sustain its allegation.
The defendant in objection three says that specific performance should be refused because Harris and William Nevin and the complainants defaulted in the performance of the contract of December 20th, 1935. It claims that they, among other things, agreed to pay the defendant the sum of $3,500 on February 1st, 1936, and they did not do so; that, *Page 116 
consequently, they are not entitled to relief because of that paragraph in the agreement which provided that "in the event there is default in the payment of any one installment of sums paid pursuant to this agreement, shall be applied toward a reduction of the judgment, and the judgment creditor [the defendant] may proceed to enforce the collection of the balance due on said judgment as if this agreement had not been entered into." In justification of its position, it calls attention to the rule stated in King v. Ruckman, 20 N.J. Eq. 316 (at p.354), that:
"In the first place, there is no doubt that time should be the essence of a contract on the sale of property. It may be so by the expressed stipulation of the parties, or it may arise by implication from the very nature of the property or the avowed objection of the seller or the purchasers."
In order to entitle one to a remedy of specific performance, it must be shown that everything has been done that is required to be done under the terms of the contract. Ludlum v. Buckingham,35 N.J. Eq. 71; Young's Adm'r v. Rathbone, 16 N.J. Eq. 224;Furman v. Clark, 11 N.J. Eq. 306. The complainants say there was no default under the contract; that there was no specified time for the payment of the $3,500 mentioned; that the agreement was partially performed by both parties, whereby the defendant received the sum of $7,000; and the complainants received from it, the defendant, an assignment of the judgment against William Nevin; and the defendant, in turn, received from the complainants an assignment of the $3,500.
William Nevin testified that the first time the question of the payment of the $3,500 was discussed after the delivery of the assignment to the defendant, was in April or May, 1936, when he met Morris Shestack, the defendant's attorney, at a meeting of creditors in the reorganization proceedings of the corporations aforesaid in the United States district court. Nevin said that Shestack told him "to let the $3,500 ride until the [reorganization] litigation was terminated." Shestack admitted the conversation but denied that he said the $3,500 should ride until the termination of the litigation. *Page 117 
Shestack testified that at the time he said to Nevin: "Bill, why don't you pay the $3,500?" There is no other evidence in the case of any discussion between the parties to the suit as to when the sum of $3,500 was to be paid. The complainants contend that if the defendant terminated the agreement because of default in the payment of $3,500 on February 2d 1936, there is no testimony to that effect. They say that since the defendant retained the assignment for the $3,500, that, in itself, was an indication that the contract or agreement was not terminated, and showed a definite intention on the defendant's part to consider the agreement as existing. They argue that there was no expressed or implied agreement between the parties that time was to be considered as of the essence, and that if the defendant intended to regard the contract as having ended, it then became its duty to so advise them, the complainants. I believe there is force and merit to the complainants' argument.
The defendant contends that there was a full, adequate and complete remedy at law, and that this court should refuse jurisdiction in the premises. I am not in accord with that contention. Cutting v. Dana, 25 N.J. Eq. 265; Feld v.Kantrowitz, 102 N.J. Eq. 307; 140 Atl. Rep. 426; Reeves v.Reeves, 102 N.J. Eq. 436; 141 Atl. Rep. 175; Downs v. JerseyCentral Power and Light Co., 117 N.J. Eq. 138; 174 Atl. Rep. 887;Pridmore v. Steneck, 122 N.J. Eq. 35; 191 Atl. Rep. 861. It is my belief these proceedings belong within this jurisdiction.
Under the defendant's fifth objection, it raises the defense of laches against the complainants. I do not think the complainants are guilty of laches.
There is reason to believe that the defendant waived the payment of the $3,500 until the litigation in the reorganization proceedings in the federal court would be terminated. The complainants say that the conduct of the defendant in taking no action to terminate the agreement; in not demanding the payment from them of the $3,500; in retaining the assignment of the contract, and the assurance from the defendant's counsel to await the termination of the bankruptcy *Page 118 
proceedings lulled them into a false sense of security; and having placed them in that position it would be inequitable under the circumstances to allow defendant to take advantage of the impression its conduct created in the minds of the complainants, and it would be manifestly unjust to deny them relief. InBommelyn v. Moss, 125 N.J. Eq. 236; 197 Atl. Rep. 6, the court of errors and appeals, in part, said:
"Now we think the rule dispositive of the present case, is this: where the buyer of a vacant lot of land, because of the seller's attitude and the consequent course of dealing of the parties with reference to the contract, was justified in believing that it was not necessary for her to pay installments promptly, the buyer was entitled to reasonable notice from the seller of a change of attitude on her part or a reasonable notice that the buyer's rights would be terminated unless she should promptly make payment of the final balance due, and without such reasonable notice the seller could not declare a forfeiture even though the written contract made time its essence. Brown v.Ely, 92 N.J. Eq. 487; 113 Atl. Rep. 698.
"Strict performance of a contract may be waived by the vendor.Isbill v. Duffy, 110 N.J. Eq. 429; 160 Atl. Rep. 326.
"In Kerny v. Johnson, 104 N.J. Eq. 244; 144 Atl. Rep. 808,
this court held that though the contract provided that time was of the essence, such statement is not conclusive where it appears from the evidence and the conduct of the parties that they did not in fact so treat the contract, and did not in fact consider that time should be of the essence of the contract.
"We believe that the facts in the case at bar show that the defendant Mrs. Bott lulled the complainant into a position of false security, and that she should not be permitted to declare a forfeiture, without giving the complainant a reasonable time to perform as Mrs. Bott evidently unlawfully endeavored to do."
On the part of the complainants there is testimony to the effect that on February 2d 1938, they tendered payment of the $3,500 to the defendant's counsel Shestack, who had been *Page 119 
representing it in the contract, and subsequent, proceedings; but the tender was refused; and during the course of the conversation incident to the tender, Shestack left his office, and procured from W. Morton Carden, who was acting as trustee in the reorganization proceedings under the bankruptcy act, a dividend on account of the claims presented by the defendant in those proceedings; that he, Shestack, acted hurriedly, in order to forestall action on the part of the complainants from claiming the dividends from Carden, or placing a lien thereon. It is significant that the first dividend paid by the trustee in the reorganization proceedings was issued to Shestack, who, the following day, had the check certified and paid therefrom, less counsel fees, the amount due to the defendant. No other creditors in the reorganization proceedings received a dividend for a period of thirty days. Carden, who drew the check for Shestack, on February 4th, 1938, stated to one of the other creditors in the reorganization proceedings, who applied to him for a dividend, that an appeal was pending from a certain order in the proceedings which prevented him from paying any other dividends until the expiration of thirty days after the date of the order. The payment to Shestack, nevertheless, has every appearance of favoritism, and a designed and planned "shut-out" for the complainants.
I am convinced the complainants are entitled to the relief they seek, and shall so advise. *Page 120